**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN**

U.S. WATER SERVICES, INC. and
ROY JOHNSON

        Plaintiffs,

    v.

NOVOZYMES A/S and
NOVOZYMES NORTH AMERICA, INC.,

        Defendants.

Case No. 3:13-cv-00864-jdp

**MEMORANDUM IN SUPPORT OF NOVOZYMES'
MOTION TO COMPEL AND MOTION FOR
DISCOVERY SANCTIONS**

**[HIGHLY CONFIDENTIAL – FILED UNDER SEAL]**

**TABLE OF CONTENTS**

Page

I.     INTRODUCTION ...................................................................................................1

II.    BACKGROUND ....................................................................................................2

III.   ARGUMENT ..........................................................................................................4

       A.    Mr. Johnson's Improper Conduct ...........................................................4

       B.    Mr. Skilton's Improper Conduct .............................................................7

             1.    Instructions Not to Answer .........................................................7

             2.    Suggestive Speaking Objections.................................................10

             3.    Argumentative and Unprofessional Behavior............................13

       C.    The Result of U.S. Water's Improper Deposition Conduct ...................15

IV.    CONCLUSION.....................................................................................................16

# TABLE OF AUTHORITIES

**Page**

C ASES

*Applied Telematics, Inc. v. Sprint Corp.*,
No. CIV.A. 94-CV-4603, 1995 WL 79237 (E.D. Pa. Feb. 22, 1995) ......................................5

*Begolli v. Home Depot*,
No. 11-cv-380-bbc, 2013 WL 5745105 (W.D. Wis. Oct. 23, 2013) ..................................6, 15

*De Graffenried v. United States*,
224 U.S.P.Q. 787 (Ct. Cl. 1983) ..............................................................................................5

*Ecker v. Wis. Cent. Ltd.*,
No. 07-C-371, 2008 WL 1777222 (E.D. Wis. Apr. 16, 2008) ...............................................10

*Hoeft v. Richardson*,
No. 09-cv-115-bbc, 2009 WL 3242067 (W.D. Wis. Oct. 2 2009) .........................................10

*In re Method or Processing Ethanol Byproducts and Related Subsystems (858)*
*Patent Litig.*,
280 F.R.D. 441 (S.D. Ind. 2011).......................................................................................8, 15

*LM Ins. Corp. v. ACEO, Inc.*,
275 F.R.D. 490 (N.D. Ill. 2011).......................................................................................8, 10

*NDK Crystal, Inc. v. Nipponkoa Ins. Co.*,
No. 10 C 1824, 2011 WL 43093 (N.D. Ill. Jan. 4, 2011) ........................................................8

*Orgler Homes, Inc. v. Chicago Reg'l Council of Carpenters*,
No. 06 C 50097, 2008 WL 597291 (N.D. Ill. Mar. 3, 2008) .................................................12

*Oyebade v. Boston Scientific Corp.*,
No. 11-cv-0968-JMS-DML, 2012 WL 4020971 (S.D. Ind. Sept. 12, 2012) ............................7

*Phillip M. Adams & Assocs., LLC v. Winbond Elecs. Corp.*,
No. 1:05-CV-64-TS, 2010 WL 3655783 (D. Utah Sept. 14, 2010).........................................5

*Prowess, Inc. v. RaySearch Labs. AB*,
No. CIV. WDQ-11-1357, 2013 WL 1856348 (D. Md. Apr. 30, 2013) ....................................5

*Redwood v. Dobson*,
476 F.3d 462 (7th Cir. 2007). .................................................................................................8

*Rickels v. City of S. Bend*,
33 F.3d 785 (7th Cir. 1994) ...................................................................................................16

*Specht v. Google, Inc.*,
    268 F.R.D. 596 (N.D. Ill. 2010)............................................................................8, 10, 12, 16

*Wilson v. Sundstrand Corp.*,
    Nos. 99 C 6944, 99 C6946, 2003 WL 21961359 (N.D. Ill. Aug. 18, 2003)............................10

## OTHER AUTHORITIES

Federal Rule of Civil Procedure 30 ........................................................................................ *passim*

Federal Rule of Civil Procedure 37 ........................................................................................ *passim*

Fed. R. Evid. 701 ......................................................................................................................5

Defendants Novozymes A/S and Novozymes North America, Inc. (collectively, "Novozymes") move to compel the further deposition of plaintiff Roy Johnson, and also move for discovery sanctions as a remedy for the deposition misconduct of Mr. Johnson and plaintiffs' lead counsel, John Skilton.

## I.  INTRODUCTION

To facilitate efficient deposition examinations, the Federal Rules of Civil Procedure clearly circumscribe the behavior of deponents and attorneys during depositions.  Rule 30(c) provides that the cross-examination of an adverse deponent proceeds as it would at trial, and Rule 37(a)(4) directs that an evasive or incomplete answer by a deponent constitutes a failure to answer.  For attorneys, Rule 30(c)(2) provides that an objection "must be stated concisely in a nonargumentative and nonsuggestive manner."  Perhaps more importantly, an attorney cannot instruct a deponent not to answer a question unless it is "necessary to preserve a privilege [or] to enforce a limitation ordered by the court."  And under Rule 30(d)(2), the Court may sanction any person (attorney or deponent) "who impedes, delays, or frustrates the fair examination of the deponent."

Plaintiffs U.S. Water and Roy Johnson (collectively, "U.S. Water"), and their lead counsel, John Skilton, have engaged in an escalating pattern of discovery abuse in depositions conducted in this case.  That pattern reached its nadir (at least to date) in the critical deposition of Roy Johnson, a named plaintiff in this action and one of two inventors on the patents-in-suit.  Mr. Johnson refused to answer most of the questions put to him and reverted instead to repeatedly reading long excerpts from the patents into the record.  Mr. Johnson's obstructionist behavior was compounded by the actions of his attorney, Mr. Skilton.  Mr. Skilton repeatedly (1) interrupted or preempted Mr. Johnson's testimony, (2) made extensive speaking objections that went far beyond the appropriate form objections, (3) offered substantive testimony and

commentary on the questions posed, (4) insulted Novozymes' counsel, (5) used offensive language, and (6) yelled and made menacing gestures. In addition to his unprofessional behavior, on at least seven occasions, Mr. Skilton instructed Mr. Johnson not to answer a question on grounds having nothing to do with privilege. The result of this misconduct by Mr. Johnson and Mr. Skilton was that, in seven hours of deposition, Novozymes was able to secure less than two-and-a-half hours of substantive testimony and was unable to cover a range of critical topics about which Mr. Johnson has important knowledge.

Novozymes is acutely aware that courts generally, and this Court in particular, prefer not to be dragged into discovery fights, and Novozymes does not file this motion lightly. But U.S. Water's misconduct, and particularly that of Mr. Skilton, has reached a level that is preventing Novozymes from conducting meaningful depositions of key witnesses. As such, Novozymes respectfully requests an order (1) compelling Mr. Johnson to appear for another seven-hour deposition, (2) ordering Mr. Johnson to answer questions in a direct, complete, and non-evasive manner, (3) ordering Mr. Skilton (or any of plaintiffs' other lawyers) to confine his objections to the rules (*i.e.*, objections to form and appropriate instructions not to answer), and to conduct himself in a proper and professional manner. Novozymes respectfully requests further that the Court award Novozymes its fees and costs for filing this motion and re-deposing Mr. Johnson.

Pursuant to Rule 37(a)(1), Novozymes certifies that it conferred in good faith with plaintiffs, through counsel, and the parties were unable to resolve the issues raised in this motion. *See* accompanying Declaration of David Tellekson ("Tellekson Decl."), ¶¶ 9-11.

## II.     BACKGROUND

Roy Johnson is a named plaintiff in this action, a key employee of U.S. Water, and one of two inventors on the patents-in-suit. He was also a named party in the *U.S. Water Servs., Inc. v. ChemTreat, Inc.* action in the District of Minnesota, which involved the parent patent to the two

continuation patents that are at issue in this case.  Consequently, Mr. Johnson is an important

witness with respect to the conception and reduction to practice of the claimed invention, its

prosecution history before the PTO, how it may or may not be distinguished from the prior art,

U.S. Water's own use of the claimed inventions, and U.S. Water's failure to disclose material

information and admissions from the *ChemTreat* litigation to the PTO.

On September 2, 2014, Novozymes first served a notice for Mr. Johnson's deposition,

noticing it for October 16, 2014.  Due to the delayed production of Mr. Johnson's documents, the

parties ultimately rescheduled the deposition to November 18, 2014.  On October 21, 2014 (four

weeks before Mr. Johnson's deposition), Novozymes' counsel asked for confirmation that all

responsive documents related to Mr. Johnson would be produced no later than October 24, 2014,

to allow adequate time to prepare for the deposition.  Tellekson Decl., ¶ 2.

U.S. Water did not object to Novozymes' October 21 request, yet it also did not produce

the responsive documents before October 24.  Instead, on November 7, 12, and 14, U.S. Water

produced a total of approximately 10,400 responsive documents (comprising nearly 29,000

pages).  Tellekson Decl., ¶ 3.  On November 17, 2014 (the day before Mr. Johnson's deposition),

U.S. Water produced another 176 responsive documents (comprising 1,072 pages).  Thus, in the

six days leading up to Mr. Johnson's deposition, U.S. Water produced over 7,500 documents

(comprising over 21,000 pages) that had not previously been produced during many months of

discovery.  *Id.*  U.S. Water's belated production complicated further what would already have

been, in light of Mr. Johnson's role and knowledge, a lengthy and complicated deposition.  *Id.*

Against that backdrop, on November 18, 2014, Novozymes' lead counsel, David

Tellekson, conducted Mr. Johnson's videotaped deposition in Minneapolis, Minnesota.  A true

and correct copy of the transcript of Mr. Johnson's deposition has been filed with the Court

Dkt. No.109. Also submitted in support of this motion are excerpts from the video of Mr. Johnson's deposition, which illustrate more vividly than the transcript the nature and extent of Mr. Johnson's and Mr. Skilton's misconduct. Tellekson Decl., ¶ 4, Ex. A.

## III.     ARGUMENT

The Federal Rules govern and limit the conduct of both deponents and their lawyers during a deposition. As the Court will see from the transcript, the deposition video excerpts, and the discussion below, both Mr. Johnson and Mr. Skilton violated the rules in a variety of ways, and generally impeded Mr. Tellekson's ability to take an efficient or meaningful deposition.

### A.     Mr. Johnson's Improper Conduct

Federal Rule of Civil Procedure 30 generally governs depositions. Rule 30(c)(1) provides that "examination and cross-examination of a deponent proceed as they would at trial under the Federal Rules of Evidence." A deponent, therefore, may no more evade or refuse to answer a question at deposition than he could evade or refuse to answer a question on the witness stand. Rule 37(a) addresses a party's recourse, and authorizes a motion to compel, where "a deponent fails to answer a question asked under Rule 30." Importantly, Rule 37(a)(4) provides that "***an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond***" (emphasis added). That rule dovetails with the provision in Rule 30(d)(2) that the Court "may impose an appropriate sanction—including the reasonable expenses and attorney's fees incurred by any party—on a person who impedes, delays, or frustrates the fair examination of the deponent."

Mr. Johnson plainly had been coached to avoid providing any detail concerning or explanation of his invention, beyond the words set forth in the specification and claims of the asserted patents, even though such questioning is highly relevant to this action. Consequently, for virtually every question that asked him to explain his invention, Mr. Johnson simply read

4

verbatim from the patent specification or claims of the patents.  *See* Tellekson Decl., ¶ 5.  In one illustrative exchange, Mr. Tellekson asked Mr. Johnson how a particular prior art reference differs from what Mr. Johnson teaches in the '399 patent.  In response, Mr. Johnson read an entire paragraph from the patent's specification into the record, which was not responsive to Mr. Tellekson's straightforward question.  Mr. Tellekson inquired multiple times about what Mr. Johnson was saying by reading the specification, punctuated by improper objections from Mr. Skilton (more on that below), and each time Mr. Johnson re-read the patent language and refused to address the question.  *See* Dkt. No. 109, Transcript at 141:10-147:9.

It is entirely proper to question an inventor regarding his invention, its prosecution history, and how it differs from the prior art.  *See Phillip M. Adams & Assocs., LLC v. Winbond Elecs. Corp.*, No. 1:05-CV-64-TS, 2010 WL 3655783, at *2 (D. Utah Sept. 14, 2010) (an inventor offered as a fact witness "is a competent witness to explain the invention and what was intended to be conveyed by the specification and covered by the claims" and "[t]he testimony of the inventor may also provide background information, including explanation of the problems that existed at the time the invention was made and the inventor's solution to these problems" (quoting *Voice Techs. Grp., Inc. v. VMC Sys., Inc.*, 164 F.3d 605, 615 (Fed. Cir. 1999))); *De Graffenried v. United States*, 224 U.S.P.Q. 787, 788-89 (Ct. Cl. 1983) (finding that "questions which elicit [plaintiff-inventor's] opinions regarding his '586 patent, its prior art, and its infringement, are proper deposition questions"); *Applied Telematics, Inc. v. Sprint Corp.*, No. CIV.A. 94-CV-4603, 1995 WL 79237, at *3 (E.D. Pa. Feb. 22, 1995) ("This Court finds that the questions propounded by defendant's counsel did not go beyond what was enumerated by Fed. R. Evid. 701. . . . Defendant's questions did not ask for expert opinions, but simply asked for Riskin's personal opinions regarding his patent, its prior art, and its infringement."); *Prowess,*

*Inc. v. RaySearch Labs. AB*, No. CIV. WDQ-11-1357, 2013 WL 1856348, at *8 (D. Md. Apr. 30, 2013) (ordering inventor to answer questions regarding the patentability of the invention over a piece of prior art because "a defendant in a patent suit may properly ask an inventor deposition questions about the asserted patent and prior art"). In response to straightforward deposition questions regarding these matters, Mr. Johnson was not free to ignore those questions and simply parrot the patent language.

These tactics were not isolated. Mr. Johnson's overarching approach to the deposition was to resist directly answering any questions that required him to provide any context, detail, or explanation regarding the patents, the underlying purported invention, or the relationship of his purported invention to the key prior art that had been distinguished by his counsel during prosecution of the patents. *See* Tellekson Decl., ¶ 5; Dkt. No. 109, Transcript, *e.g.*, 10:4-14:9; 18:14-20:25; 22:18-25:17; 25:19-27:6; 27:8-28:22; 30:3-14; 30:21-34:17; 35:12-38:19; 44:6-45:2; 47:3-48:9; 50:2-17; 52:5-53:10; 61:10-64:14; 69:10-15; 69:16-70:13; 70:14-72:10; 72:12-74:22; 86:2-89:6; 90:16-92:12; 92:14-98:16; 132:17-135:8; 143:13-148:3; 151:25-152:22; 152:23-153:21; 154:7-157:5; 158:7-166:7; 170:18-172:10; 195:7-196:24; 196:25-199:10; 202:19-207:3; 226:3-227:2; 253:3-254:8; 254:10-256:8. Indeed, as the citations above reflect, Mr. Johnson evaded nearly every question related to the invention claimed in the asserted patents.

As noted, the Federal Rules expressly state that an evasive or incomplete deposition answer is tantamount to a failure to answer at all, and is sanctionable as such. *See* Rule 37(a)(4). And the courts, including this one, agree. *See*, *e.g.*, *Begolli v. Home Depot*, No. 11-cv-380-bbc, 2013 WL 5745105, at *2, *5 (W.D. Wis. Oct. 23, 2013) (deponent "gave rambling, irrelevant answers, spoke over the examining lawyer, interjected improper objections and refused to answer

certain questions"; Court required deponent to appear for second deposition, answer questions "Yes or No" when possible, and "curtail his tendency to be flippant and hostile and … make a genuine effort to answer the questions put to him"); *Oyebade v. Boston Scientific Corp.*, No. 11-cv-0968-JMS-DML, 2012 WL 4020971, at *2 (S.D. Ind. Sept. 12, 2012) ("Making evasive or incomplete disclosures … in answering deposition questions is another type of discovery misconduct. Rule 37(a)(4). That behavior is treated as a failure 'to disclose, answer, or respond,' *id.*, and Rule 37(d) permits sanctions under Rule 37(b) to be imposed for that conduct").

In summary, Mr. Johnson violated his obligation to respond in a direct and complete way to deposition questioning. Under the Federal Rules, his incomplete and evasive answers are deemed non-responsive, and the proper remedy is to compel Mr. Johnson to appear and be deposed again.

## B. Mr. Skilton's Improper Conduct

Rule 30 addresses not only the conduct of deponents, but of attorneys defending depositions. Rule 30(c)(2) provides that an attorney's objections "must be stated concisely in a nonargumentative and nonsuggestive manner." The Rule states further that an attorney "may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3)."[1] In defending Mr. Johnson's deposition, Mr. Skilton persistently violated all of those strictures.

### 1. Instructions Not to Answer

Perhaps the most insidious form of attorney misconduct in a deposition is an improper

---

[1] Rule 30(d)(3) allows a party to move to terminate or limit a deposition if it is being conducted in bad faith or to annoy, embarrass, or oppress the deponent. Despite repeatedly threatening to terminate Mr. Johnson's deposition, Mr. Skilton never did so. Instead, he used inappropriate speaking objections and improper instructions not to answer to hijack the process and obstruct Mr. Tellekson's questioning.

instruction to a deponent not to answer a question. Such instructions prevent the other party from making a record and, if the instruction is ultimately determined by the court to be invalid or improper, require the deposition to be re-convened. *Redwood v. Dobson*, 476 F.3d 462, 467-68 (7th Cir. 2007) ("Webber gave no reason beyond his declaration that the questions were designed to harass rather than obtain information—which may well have been their point, but Fed. R. Civ. P. 30(d) specifies how harassment is to be handled. Counsel for the witness may halt the deposition and apply for a protective order, see Rule 30(d)(4), but must not instruct the witness to remain silent."); *In re Method or Processing Ethanol Byproducts and Related Subsystems (858) Patent Litig.*, 280 F.R.D. 441, 446-47 (S.D. Ind. 2011) (in patent case, inventor's lawyer's instructions not to answer questions related to documents not produced in discovery was improper "self-help remedy" in violation of Rule 30(b)(2); ordering monetary sanctions and continuation of deposition); *LM Ins. Corp. v. ACEO, Inc.*, 275 F.R.D. 490, 491 (N.D. Ill. 2011) ("Of course, overt instructions to a witness not to answer a question are improper absent a claim of privilege") (citing *Redwood*, Rule 30(c)( 2)); *NDK Crystal, Inc. v. Nipponkoa Ins. Co.*, No. 10 C 1824, 2011 WL 43093, at *3 (N.D. Ill. Jan. 4, 2011) (instruction not to answer because "questions were not only harassing but also 'hypocritical, in bad faith, and burdensome'" was improper; proper remedy was a motion under Rule 30(d)(3)); *Specht v. Google, Inc.*, 268 F.R.D. 596, 598 (N.D. Ill. 2010) (attorney may not "instruct[] a witness not to answer a question where none of the exceptions in Rule 30(c)(2) apply"; ordering monetary sanctions and continuation of deposition).[2]

On at least seven occasions, Mr. Skilton specifically instructed Mr. Johnson not to answer

---

[2] In fact, the Advisory Committee's notes on Rule 30 observe that "[d]irections to a deponent not to answer a question can be even more disruptive than objections." *See* Fed. R. Civ. P. 30, 1993 Committee's Note, ¶ 17.

questions on grounds having nothing to do with privilege or any limitation ordered by the Court.

Here is just one illustrative example:

> Q.  Mr. Johnson, do you know anything more about phytin other than it's a form of phosphorus?
>
> MR. SKILTON:  Asked and answered.
>
> BY MR. TELLEKSON:
>
> Q.  You need to answer the question.
>
> A.  Phytin is a form of phosphorus.
>
> Q.  Are you intentionally refusing to answer my question, Mr. Johnson?
>
> MR. SKILTON:  No, no, no, no.  You don't have to answer that question.  That is about as bad a question – I'm going to make a record here.  This deposition is not a discovery deposition.  It's an effort to shove a theory which is erroneous down an inventor's throat with questions that are improper and statements that are intended to intimidate and is an improper examination and if it continues, we're just going to have to stop and have the magistrate sit in and screen these questions.  Let's take a break.

Dkt. No. 109, Transcript at 53:3-23.  There were several other similar instances, where Mr. Skilton forbade Mr. Johnson from answering a question based on Mr. Skilton's personal opinion that the questioning was "improper" or in "bad faith."  *See, e.g.*, *id.* at 14:14-16:16; 98:18-100:13; 147:23-150:5; 166:3-166:15; 189:16-190:11.

Rule 30(d)(3) sets forth the process for terminating a deposition that is purportedly being "conducted in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent or party."  The objecting attorney must make a demand on the record, the deposition is suspended, and the objecting attorney must seek court intervention.  Rule 30(d)(3)(A)-(B); *see also Redwood*, 476 F.3d at 467-68.  Mr. Skilton never followed that process (and had no basis to do so, as the questions were proper and posed in good faith).  In the absence of a proper Rule 30(d)(3) motion, he was not free to derail Novozymes' deposition by unilaterally determining which questions were "proper" and which were not.

## 2.    Suggestive Speaking Objections

Rule 30(c)(2) prohibits "suggestive" objections.  The proper way to object to most defective questioning is to object to form, with perhaps a short description of the basis (*e.g.*, "foundation" or "compound").  That preserves the objection for the record so it may be reasserted at trial.  *See* Fed. R. Civ. P. 30(d)(3), 1993 Committee's Note, ¶ 16 ("[Objections] ordinarily should be limited to those that … might be waived if not made at that time, *i.e.*, objections on grounds that might be immediately obviated, removed, or cured, such as to the form of a question or the responsiveness of an answer."); *Hoeft v. Richardson*, No. 09-cv-115-bbc, 2009 WL 3242067, at *4 (W.D. Wis. Oct. 2 2009) ("[A]lthough Hoeft has the right to make objections to preserve his record, Hoeft nevertheless must truthfully and completely answer all questions put to him except those that invade a legally recognized privilege.").

Improperly suggestive objections are those that essentially coach the deponent how to respond.  *Specht*, 268 F.R.D. at 598 ("Objections that are argumentative or that suggest an answer to a witness are called 'speaking objections' and are improper under Rule 30(c)(2)."); *LM Ins. Corp.*, 275 F.R.D. at 491 ("coaching a witness during the deposition is equally prohibited"); *Wilson v. Sundstrand Corp.*, Nos. 99 C 6944, 99 C6946, 2003 WL 21961359, at *10 (N.D. Ill. Aug. 18, 2003) ("The Federal Rules of Civil Procedure unambiguously prohibit 'speaking' objections by counsel at a deposition."); *Ecker v. Wis. Cent. Ltd.*, No. 07-C-371, 2008 WL 1777222, at *2 (E.D. Wis. Apr. 16, 2008) ("There is no proper need for the witness's own lawyer to act as an intermediary, interpreting questions, deciding which questions the witness should answer, and helping the witness to formulate answers.  The witness comes to the deposition to testify, not to indulge in a parody of Charlie McCarthy, with lawyers coaching or bending the witness's words to mold a legally convenient record." (quoting *Hall v. Clifton Precision*, 150 F.R.D. 525, 528 (E.D. Penn. 1993))).

Many of Mr. Skilton's objections were more than merely suggestive, and were clearly designed to guide, or preempt entirely, Mr. Johnson's testimony. For example:

> Q. If you look at the second paragraph, it says, "Moreover, Novozymes' sales personnel must not state or imply that Novozymes' phytase-based product is a substitute for, or will lead to the same salutary results as, the pHytOUT V process. Such statements are quantifiably false." Why is that statement quantifiably false?

> MR. SKILTON: This is not his statement, Counsel. Are you suggesting it is?

> BY MR. TELLEKSON:

> Q. Go ahead Mr. Johnson.

> MR. SKILTON: Lacks foundation, improper question.

> MR. TELLEKSON: Please limit your objections to proper ones, Mr. Skilton.

> MR. SKILTON: That is a very proper one and please limit your questions to proper questions. I don't know what you think you're doing with a document written by a lawyer and asking a witness to attest to its contents. Please behave.

> THE WITNESS: Mr. Tellekson, I'm not an attorney.

Dkt. No. 109, Transcript at 202:19-203:19. And:

> Q. Does [the specification] ever say you can add it to fermentation or before fermentation?

> MR. SKILTON: Objection, asked and answered.

> THE WITNESS: Page 4138, the first line, "In an embodiment, the present invention provides a method in which the agent or enzyme is introduced into the ethanol processing fluid under optimal conditions of temperature and pressure. Where the agent is phytase, the term 'optimal conditions' refers to those conditions of concentration, temperature, residence time or reaction time, and pH that allows sufficient reaction for soluble phytate, phytate suspension, phytate precipitate, or insoluble phytate scale that reduces the level of the phytase deposit to an amount acceptable for operation of the ethanol plant or process."

> BY MR. TELLEKSON:

> Q. I didn't hear you read anything about adding it to fermentation or before fermentation there. Is there someplace where it says that?

> MR. SKILTON: We just heard it, Counsel. It was read in the prior answer.

MR. TELLEKSON:  Limit your objections to proper ones, Mr. Skilton.

MR. SKILTON:  No, I'm not going to permit you to argue this file under your theory and then charge him with fraud based on your theory.  I think that we're getting close to just simply adjourning and going in front of a federal magistrate and let you make your accusations with some protection to the witness and to me.

*Id.* at 187:11-188:21.  As these exchanges reflect, Mr. Skilton repeatedly commented on the

question, making suggestive objections to the witness, and the answer, again, suggesting how the

witness should respond to any follow-up questions from Mr. Tellekson.

Indeed, in several instances, Mr. Skilton offered direct testimony or commentary of his

own on Mr. Tellekson's questions:

Q.  So when Veit adds phytase to the fermentation step and it suggests adding it at 32 degrees C., that's in the range of temperatures that your patent says are acceptable; correct?

MR. SKILTON:  Objection, incomplete and misleading question.  Veit says no such thing.

MR. TELLEKSON:  Please limit the speaking objections, Mr. Skilton.  They're incredibly improper.

MR. SKILTON:  Well, you know, it's incredibly for me – we'll see all of these questions in the form of your expert opinion in three hours and that's all this:  Can you agree with my expert when he says this.  You might as well begin your sentence with that predicate in your question.

THE WITNESS:  Column 6 of the patent, Line 44 says, "In an aspect, the phytase is added to the ethanol processing fluid at a temperature sufficient to allow the reaction between phytate and phytase to proceed to completion without degrading the enzyme."

*Id.* at 152:23-153:21.  Those "objections" were actually speeches and were clearly improper by

any reasonable standard.  *See Specht*, 268 F.R.D. at 599 ("This set the pattern for the deposition.

Google would ask a simple question, and Mr. Fleming, through extensive, argumentative

speaking objections, would take the procedure off on some wild excursion, meanwhile coaching

the witness on how to answer."); *Orgler Homes, Inc. v. Chicago Reg'l Council of Carpenters*,

No. 06 C 50097, 2008 WL 597291, at *2 (N.D. Ill. Mar. 3, 2008) ("misconduct of plaintiff's

counsel" included "[speaking] for the witness" and "instruct[ing] the witness how to answer").

Mr. Skilton also routinely interrupted and cut off Mr. Johnson's testimony in the middle of an answer, or interjected commentary on Mr. Tellekson's questions before they were complete. *See*, *e.g.*, Dkt. No. 109, Transcript at 62:4-14; 205:1-9; 242:21-243:10.[3] Those tactics are, of course, also wholly improper.

### 3. Argumentative and Unprofessional Behavior

Finally, Rule 30(c)(2) prohibits "argumentative" objections. As noted above, many of Mr. Skilton's "objections" were in fact his own self-serving commentary. But others went well beyond that to be not just argumentative, but accusatory and attacking. A few examples:

> Q. So that says to me that it can be either 100% reduction or something less than 100% reduction. Isn't that how you read it?
>
> MR. SKILTON: Are you the expert here? Do we care what it says to you? Why do you ask a question like that? Can you ask a proper one?
>
> MR. TELLEKSON: You're wasting time again.
>
> MR. SKILTON: No, sir, your question is ridiculous on its face. Ask a proper question.
>
> MR. TELLEKSON: You're wasting time, Mr. Skilton.
>
> MR. SKILTON: Yes, you are wasting time, too, Counsel. So that's the way life is.

Dkt. No. 109, Transcript at 93:18-94:9. And:

> Q. Mr. Johnson, I'm sure you can listen to this question and understand it and answer it. So I'm going to have it read back one more time. I want you to give me your best, most concise answer to this question and then we'll move on.
>
> MR. SKILTON: I move to strike that speech and all the other speeches that have been made throughout this deposition on the grounds that they are harassment and uncalled for, untrue and should never be made by a lawyer who's practicing law in the Western

---

[3] In fact, Mr. Skilton acknowledged that he was interrupting and confirmed that he had no intention of stopping: "MR. TELLEKSON: Don't interrupt the witness' answer, Mr. Skilton. That's improper. MR. SKILTON: No sir. You are on improper grounds here and ***I'll interrupt him when I care to***. Thank you very much." Dkt. No. 109, Transcript at 205:4-9 (emphasis added).

District of Wisconsin.

MR. TELLEKSON:  Please go ahead.

(WHEREUPON, the question appearing on Page 163, Lines 9 through 12 was read back by the court reporter.)

THE WITNESS:  Can you read back my answer.

BY MR. TELLEKSON:

Q.  No, I want an answer to my question, Mr. Johnson.  All you've done is avoid the question.  If you're asked this at trial, I want to know what you're going to say.  I'm entitled to know what you're going to say at trial and I want you to tell me whether you're denying that Paragraph 10 of Veit teaches adding phytase to the fermentation step of ethanol processing?

MR. SKILTON:  That question is misleading on its face.  The speech is inappropriate for grounds stated.  He's not called as an expert witness or a person of ordinary skill in the art and we have wasted a full hour on what is no more, no less than the attempt to shove an expert opinion down the throat of a lay witness.  By the way, the expert opinion is either sophomoric or full of sophistry.

*Id.* at 164:3-165:16.  And:

Q.  Please continue with your answer, Mr. Johnson.  You're entitled to answer my questions.  You're actually required to.

MR. SKILTON:  No, he's never required to answer your questions.  Most of them are unanswerable and improper.  He's required to tell the truth, sir.  That's what he's required to do.

*Id.* at 205:11-18; *see also id.* at 191:7 (calling Mr. Tellekson "a bully"); 192:6-8 ("Q: Can you reread it with – ; MR. SKILTON:  Why don't you state it.  Apparently you can't say it twice.").

It is not apparent from the transcript, but evident in the deposition video excerpts, that Mr. Skilton often raises his voice (to the point where he is effectively shouting), and also exclaims using offensive language.  *See* Tellekson Decl., ¶ 6 & Ex. A (deposition video excerpts); Dkt. No. 109, Transcript at  26:8-10 ("You don't go back to the well repeatedly.  If you don't like the answer, move on.  Jesus."); 20:22-23 ("Oh God.  Misstates his testimony.").  Mr. Skilton also engaged in nonverbal misconduct, such as finger-pointing, rising from or

spinning in his seat, or leaning across the table.  Tellekson Decl., ¶ 6.  At a minimum, that conduct is unprofessional and "frustrates the fair examination of the deponent."  *See* Rule 30(d)(2).

Mr. Skilton's conduct was not unique to Mr. Johnson's deposition.  Mr. Skilton behaved in similar ways in the depositions of Mark Skoog and Paul Young.  *See* Tellekson Decl., ¶ 7.  But that conduct became so disruptive in Mr. Johnson's deposition that Novozymes must bring this motion and seek the Court's assistance.

### C.    The Result of U.S. Water's Improper Deposition Conduct

As noted above, Mr. Johnson is not only a named plaintiff in this action but also a key witness.  Novozymes seeks to examine Mr. Johnson regarding, among other things, what he believes he invented, the "invention story" he can be expected to tell at trial, the conduct of the prosecution of the asserted patents and of the parent application to which they claim priority, how he believes the claimed invention is distinct from the prior art of which he was aware at the time of the invention, and why he and his counsel failed to disclose material information from the *ChemTreat* litigation to the PTO.  As a result of Mr. Johnson's refusal to answer questions, compounded by Mr. Skilton's delay and obstruction tactics, in seven hours of deposition time on the record, Novozymes estimates that it secured less than two-and-a-half hours of substantive testimony.  Tellekson Decl., ¶ 8.

Novozymes is entitled to a full seven-hour deposition unimpeded by improper conduct from Mr. Johnson or his lawyer.  Allowing Novozymes another seven hours with Mr. Johnson is also a reasonable and appropriate sanction for the behavior at issue.  As the many cases cited above reflect, a common sanction for deposition misconduct is to compel the deponent to appear again and be re-deposed.  *See*, *e.g.*, *Begolli*, 2013 WL 5745105, at *2, *5 (this court required deponent to appear for second deposition and properly answer questions); *In re (858) Patent*

*Litig.*, 280 F.R.D. at 446-47 (ordering monetary sanctions and continuation of deposition); *Specht*, 268 F.R.D. at 598 (same).

Rule 37(a)(4) authorizes a motion to compel evasive or incomplete deposition responses. Under Rule 37(a)(5)(A), if such a motion to compel is granted, "the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." As the Seventh Circuit has noted, "[t]he great operative principle of Rule 37(a)(4) is that the loser pays." *Rickels v. City of S. Bend*, 33 F.3d 785, 786 (7th Cir. 1994). Monetary sanctions can and should include the costs of re-deposing the witness. *See*, *e.g.*, *Specht*, 268 F.R.D. at 603 (plaintiffs bore expense of second deposition as sanction for their lawyer's misconduct).

Mr. Johnson's improper refusal to answer questions at his depositions, compounded and encouraged by Mr. Skilton's improper instructions not to answer, suggestive and obstructionist speaking objections, and generally unprofessional and discourteous behavior, necessitated this motion. As such, Novozymes is entitled to an order compelling a second deposition of Mr. Johnson and the monetary sanctions required by Rule 37.

## IV.  CONCLUSION

For the reasons set forth herein, Novozymes respectfully requests that the Court grant this motion and the following relief:

(A)  An order compelling plaintiff Roy Johnson to appear for a seven-hour deposition, at plaintiffs' sole expense (including payment of Novozymes' reasonable attorney's fees and expenses associated with that deposition);

(B)  An order compelling Mr. Johnson to answer questions in a direct, complete, and non-evasive manner;

(C)     An order compelling Mr. Skilton, or any of plaintiffs' other lawyers defending depositions in this action, to confine their objections to the rules (*i.e.*, simple, nonsuggestive and nonargumentative objections to form, and appropriate instructions not to answer), and generally to conduct themselves in a proper and professional manner; and

(D)     An award of Novozymes' reasonable attorney's fees and expenses associated with bringing this motion.

Dated:  November 26, 2014                Respectfully submitted,

FENWICK & WEST LLP


By: s/*David K. Tellekson*
    David K. Tellekson (admitted *Pro Hac Vice*)
    dtellekson@fenwick.com
    Brian D. Buckley (admitted *Pro Hac Vice*)
    bbuckley@fenwick.com
    Ewa M. Davison (admitted *Pro Hac Vice*)
    edavison@fenwick.com
    Elizabeth B. Hagan (admitted *Pro Hac Vice*)
    ehagan@fenwick.com
    FENWICK & WEST LLP
    1191 Second Avenue, 10th Floor
    Seattle, WA  98101
    Telephone:      (206) 389-4510
    Facsimile:      (206) 389-4511

    Virginia K. DeMarchi (admitted *Pro Hac Vice*)
    vdemarchi@fenwick.com
    Michael C. Saunders (admitted *Pro Hac Vice*)
    msaunders@fenwick.com
    FENWICK & WEST LLP
    Silicon Valley Center
    801 California Street
    Mountain View, CA  94041
    Telephone:      (650) 988-8500
    Facsimile:      (650) 938-5200

    Allen A. Arntsen
    aarntsen@foley.com
    Krista A. Sterken
    ksterken@foley.com
    FOLEY & LARDNER LLP
    Verex Plaza
    150 East Gilman Street
    Madison, WI  53703
    Telephone:      (608) 257-5035
    Facsimile:      (608) 258-4258

    *Attorneys for Defendants Novozymes A/S*
    *and Novozymes North America, Inc.*