REDACTED

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

U.S. Water Services, Inc., and
Roy Johnson

                         Plaintiffs,

        v.

Novozymes A/S, and
Novozymes North America, Inc.,

                Defendants.

Case No. 13-cv-864-bbc

**Expert Report of Richard F. Bero, CPA, CVA**
**April 1, 2015**

*The BERO Group*

HIGHLY CONFIDENTIAL

## TABLE OF CONTENTS

I.   Introduction ........................................................................................................... 1

    A.   Assignment .................................................................................................. 1

    B.   Basis for opinions ....................................................................................... 1

    C.   Trial ............................................................................................................. 2

    D.   Basic damages assumptions ........................................................................ 3

    E.   Summary of opinions .................................................................................. 4

    F.   Expert experience and compensation .......................................................... 4

II.   Parties in the lawsuit ............................................................................................. 5

    A.   Plaintiff ....................................................................................................... 5

        1.   U.S. Water .......................................................................................... 5

        2.   Roy Johnson ....................................................................................... 5

    B.   Defendant – Novozymes ............................................................................. 5

        1.   Novozymes A/S .................................................................................. 6

        2.   Novozymes North America, Inc. ........................................................ 6

III.   The Patented Technology – deposit control technology to reduce fouling in ethanol
plants ...................................................................................................................... 6

    A.   Overview of dry grind ethanol process ....................................................... 7

    B.   How Ethanol Plants Addressed Fouling Prior to pHytOUT ................................ 8

IV.   U.S. Water's Patented Product - pHytOUT ................................................................ 9

    A.   pHytOUT pounds, sales, ASP and profit ..................................................... 9

    B.   pHytOUT plants and customers .................................................................. 10

    C.   pHytOUT supply agreements ...................................................................... 11

    D.   Benefits of pHytOUT ................................................................................... 11

V.   Novozymes' Phytase Products - Phytaflow ............................................................ 12

HIGHLY CONFIDENTIAL

| | A. | Phytaflow pounds, sales, ASP and profit | 13 |
| | B. | Phytaflow's lower pricing | 14 |
| | C. | Novozymes identified similar Phytaflow benefits | 15 |
| | D. | Phytaflow appears to be sold with Novozyme's sales of ████ | 17 |
| VI. | | Damages opinions and basis | 19 |
| | A. | Overview of patent damages | 19 |
| | B. | Hypothetical negotiation – approximately April 9, 2013 | 20 |
| | C. | The royalty base – Phytaflow pounds | 21 |
| | D. | Royalty rate – quantitative considerations | 21 |
| | | 1. Income approach – range of approximately $10.00 to $5.00 per pound | 22 |
| | | a) ███████████████████████ | 22 |
| | | b) ███████████████████ ████████ | 24 |
| | | c) ████████████████████ ██████ | 26 |
| | | d) Phytaflow profit per unit – more than ████ per pound | 27 |
| | | 2. █████████████████████████ | 27 |
| | | 3. Cost Approach – no apparent guidance | 29 |
| | E. | Starting point royalty rate range - $5.00 to $10.00 per pound | 29 |
| | F. | *Georgia-Pacific* Factors | 29 |
| | | 1. Factor #1:  The royalties received by the patentee for the licensing of the patent in suit, proving or tending to prove an established royalty.  <u>Upward effect</u>. | 29 |
| | | 2. Factor #2:  The rates paid by the licensee for the use of other patents comparable to the patent in suit.  <u>No effect</u>. | 30 |
| | | 3. Factor #3:  The nature and scope of the license, as exclusive or non-exclusive; or as restricted or non-restricted in terms of | |

HIGHLY CONFIDENTIAL

territory or with respect to whom the manufactured product may be sold.  Neutral effect. .................................................................................. 30

4.      Factor #4:  The licensor's established policy and marketing program to maintain its patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly.  Upward effect. ............................. 30

5.      Factor #5:  The commercial relationship between the licensor and the licensee, such as, whether they are competitors in the same territory in the same line of business; or whether they are inventor and promoter.  Upward effect. .................................................. 31

6.      Factor #6:  The effect of selling the patented specialty in promoting sales of other products of the licensee; the existing value of the invention to the licensor as a generator of sales of its non-patented items; and the extent of such derivative or convoyed sales.  Upward effect. ...................................................................... 31

7.      Factor #7:  The duration of the patent and the term of the license. Neutral effect. ........................................................................... 33

8.      Factor #8:  The established profitability of the product made under the patent; its commercial success; and its current popularity. Neutral effect. ........................................................................... 33

9.      Factor #9:  The utility and advantage of the patent property over the old modes or devices, if any, that had been used for working out similar results.  Upward effect. ........................................................ 34

10.     Factor #10: The nature of the patented invention; the character of the commercial embodiment of it as owned and produced by the licensor; and the benefits to those who have used the invention. Upward effect. ........................................................................... 34

11.     Factor #11: The extent to which the infringer has made use of the invention and any evidence probative of the value of that use. Neutral effect. ........................................................................... 35

12.     Factor #12:  The portion of the profit or selling price that may be customary in the particular business or in comparable businesses for the use of the invention or analogous inventions.  No effect. ............. 35

13.     Factor #13:  The portion of the realizable profit that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer.  Higher end of range ............................................................................... 35

HIGHLY CONFIDENTIAL

14.     Factors #14 & #15:  The opinion and testimony of qualified
        experts, and the amount that a licensor (such as the patentee) and
        licensee (such as the infringer) would have agreed upon (at the
        time the infringement began) if both had been reasonably and
        voluntarily trying to reach an agreement; that is the amount a
        prudent licensee – who desires as a business proposition, to obtain
        a license to manufacture and sell a particular article embodying the
        patented invention – would have been willing to pay as a royalty
        and yet be able to make a reasonable profit and which amount
        would have been acceptable by a prudent patentee who was willing
        to grant a licensee ................................................................................... 36

G.      Opinion:  A reasonable royalty is $8.00 per pound, and royalty damages
        approximate ██ million through December 31, 2014. ...................................... 37

VII.    Conclusion ........................................................................................................ 39

HIGHLY CONFIDENTIAL

# I.      Introduction

## A.      Assignment

I have been asked to analyze and provide expert opinions on damages issues on behalf of the Plaintiffs in relation to *U.S. Water Services, Inc. and Roy Johnson v. Novozymes A/S and Novozymes North America, Inc.*, Case No. 13-cv-864-bbc.

U.S. Water Services, Inc. and Roy Johnson (collectively, "U.S. Water") have alleged that Novozymes A/S and Novozymes North America, Inc. (collectively, "Novozymes") infringe United States Patent No. 8,415,137 (the "'137 patent"), issued on April 9, 2013, titled "Preventing Phytate Salt Deposition in Polar Solvent Systems" and/or United States Patent No. 8,609,399 (the "'399 patent"), issued on December 17, 2013, titled "Reducing Insoluble Deposit Formation in Ethanol Production" (collectively, "the U.S. Water patents" or "the Patents-in-Suit").[1]

I have not formed any opinions about the infringement, validity or enforceability of the Patents-in-Suit or any legal opinions relating to the other aspects of this matter.  However, for the purposes of my analysis, I assume that Novozymes has infringed the Patents-in-Suit.  Further, I assume that by making, selling, and offering to sell phytase enzymes under the brand name Phytaflow or bearing the product number 50161 (collectively, "Phytaflow") to various ethanol plants, with the express purpose of encouraging, aiding and/or causing such plants to utilize the methods within the scope of the U.S. Water patents, Novozymes indirectly infringes through inducement and/or contributory infringement.[2]  My opinions and bases are addressed in detail throughout my report and attached schedules.

## B.      Basis for opinions

My opinions are based upon analysis and consideration of the following:

- the Complaint, other legal filings and related exhibits, including the '137 patent and the '399 patent;

- documents produced/provided by the parties in this litigation;

- deposition testimony and related deposition exhibits;

---

[1] First Am. Compl.
[2] First Am. Compl. 6-7.  *See* also, Expert Report of Eric Dorn Regarding Infringement 2, 4.

HIGHLY CONFIDENTIAL

- expert reports;

- discussions with the following U.S. Water personnel:

    - Al Bly, CEO

    - Todd Emslander, Director of Sales of Ethanol Process Technologies ("EPT")

    - Roy Johnson, Chief Innovation Officer and one of the inventors of the Patents-In-Suit

    - Monty McCoy, Director of Technology

    - Rachel Nelson, Senior Financial Analyst

    - Dennis Pasko, Vice President of EPT

- discussions with U.S. Water's technical expert:

    - Eric Dorn, Principal of Dorn Consulting, LLC

- tour of the United Wisconsin Grain Producers, LLP ("UWGP") ethanol plant in Friesland, Wisconsin;

- independent research; and

- my skills, knowledge, professional background, education and work experience.

A detailed list of data and other information I have considered at this time in developing my opinions is included as **Attachment 1**.  In the event that additional relevant information becomes available after the issuance of my Report, I will incorporate such information as necessary.

### C.    Trial

In preparing for trial, I may prepare demonstrative exhibits based upon information included in this Report or additional information that becomes available hereafter.

HIGHLY CONFIDENTIAL

### D.       Basic damages assumptions

With regard to all of my damages analyses and opinion, I assume that the parties' reported revenue, cost and units data is generally accurate and reliable.[3]  I also am instructed to make the additional primary assumptions as follows:

- The '137 and '399 patents are valid and enforceable.

- A hypothetical negotiation to determine a reasonable royalty between U.S. Water and Novozymes would have taken place on approximately April 9, 2013.[4]

- The damages period begins April 9, 2013.[5]

- All Phytaflow sales to customers set forth in **Schedule 1.0** (*i.e.*, ethanol plants with reduced pressure/vacuum or atmospheric distillation) beginning April 9, 2013 infringe the '137 patent and are subject to damages.[6]

- All Phytaflow sales to customers set forth in **Schedule 1.0** (*i.e.*, ethanol plants with reduced pressure/vacuum or atmospheric distillation) beginning December 17, 2013 infringe the claims of the '399 patent reciting a limitation relating to the pH of the ethanol processing fluid in the beer column being 4.5 or higher and are subject to damages.[7]

---

[3] I have summarized Phytaflow sales, costs and profits based on NZ-USW00026289, however, NZ-USW00028731 is an additional document produced which appears to be a forecast of Phytaflow sales.  To the extent that additional information becomes available with regards to NZ-USW00028731, I shall incorporate that into my report.

[4] Alternatively, if the '137 patent is found to not infringe, the hypothetical negotiation for the '399 patent would be approximately December 17, 2013, the date of issuance of the '399 patent, and the royalty considerations and rate would have reasonably been the same, as discussed at the end of my report.

[5] Alternatively, if the '137 patent is found to not be infringed, I have calculated damages starting December 17, 2013, the date of issuance of the '399 patent.  *See* **Schedule 1.0**.

[6] I am instructed that, if any the asserted claims of the '137 patent are found to be valid and infringed, then the royalty base includes the customer plants and Phytaflow pounds set forth in **Schedule 1.1**.  The asserted claims of the '137 patent are claims 1, 6, 12 and 13.

[7]  I am instructed that, if any the following asserted claims of the '399 patent are found to be valid and infringed, then the royalty base includes the customer plants and Phytaflow pounds set forth in **Schedule 1.2**.  The asserted claims in this group are claims 2, 16-22 and 35.  I am instructed that sales that infringe these claims also will infringe claims 1, 5-12, 25, 28-32, and 34 of the '399 patent.

HIGHLY CONFIDENTIAL

- All Phytaflow sales to customers set forth in **Schedule 1.0** (*i.e.*, ethanol plants with reduced pressure/vacuum, atmospheric or pressure distillation) beginning December 17, 2013 infringe the claims of the '399 patent not reciting a limitation relating to the pH of the ethanol processing fluid in the beer column being 4.5 or higher and are subject to damages.[8]

### E.    Summary of opinions

It is my opinion that in a hypothetical negotiation between U.S. Water and Novozymes on approximately April 9, 2013 for the Patented Technology, the parties would have agreed to a reasonable royalty of $8 per pound of Phytaflow sold.  Based on the ▮▮▮▮▮▮▮ of Phytaflow sold from April 9, 2013 through December 31, 2014, the reasonable royalty damages approximate ▮▮▮▮▮▮.[9]  In the event that only the '399 patent is found to be infringed, it is my opinion that in a later hypothetical negotiation on approximately December 17, 2013, the parties would have similarly agreed to a reasonable royalty rate of $8 per pound of Phytaflow sold, and based on at least ▮▮▮▮▮▮ of Phytaflow sold from December 17, 2013 through December 31, 2014, the reasonable royalty damages approximate ▮▮▮▮▮▮.[10]

### F.    Expert experience and compensation

I am a certified public accountant accredited in business valuation, a certified valuation analyst and the Managing Director of The BERO Group.[11]  I have analyzed economic damages and accounting and financial issues in a variety of litigation matters concerning areas such as patent infringement, trademark infringement, copyright infringement, trade secrets, breach of contract, dealership disputes and construction disputes.  I have testified as an expert more than 125 times.  My curriculum vitae, including a list of my testimonial experience in the last four years and publications in the last ten years, is included as **Attachment 2**.

Compensation to The BERO Group for professional services provided in preparing this report is based on our customary hourly fees.  My hourly rate is $485 while the rates for my staff range from $160-$350.  The BERO Group has no financial interest in the outcome of this litigation.

---

[8] I am instructed that, if any of the following asserted claims of the '399 patent are found to be valid and infringed, then the royalty base includes  the customer plants and Phytaflow pounds set forth in **Schedule 1.3**. The asserted claims in this group are 1, 5-12, 25, 28-32, and 34.
[9] **Schedule 1.0**.
[10] **Schedule 1.0**.
[11] The BERO Group was formerly a division of Corporate Financial Advisors, LLC, a firm I co-founded in 1995.

HIGHLY CONFIDENTIAL

## II.      Parties in the lawsuit

### A.      Plaintiff

#### 1.      U.S. Water

U.S. Water is a Minnesota corporation with its principal place of business in Michael, Minnesota.[12]  U.S. Water offers innovative technologies to ethanol manufactures to help improve their efficiency and profitability.[13]  Roy Johnson is an employee of U.S. Water.[14]

In mid-2009, U.S. Water introduced its pHytOUT product, a phytase product for reducing formation of insoluble deposits of phytic acid in fuel ethanol-processing equipment in fuel ethanol plants.[15]

#### 2.      Roy Johnson

Roy Johnson is currently the Chief Innovation Officer for U.S. Water.[16]  Roy Johnson is also listed as one of the inventors of both the '137 patent and the '399 patent.[17]

### B.      Defendant – Novozymes



███████████████████, Novozymes introduced its Phytaflow product ████████ ███████████████████████████████████████████████████████████ ███████████.[18]

---

[12] Compl. ¶ 1.
[13] Compl. ¶ 1.
[14] Compl. ¶ 2.
[15] Per 'Phytase sales 3.17.15.xlsx.'  Per discussions with counsel and Eric Dorn, I understand that the pHytOUT product itself is not patented, but rather is used in the methods of the "Patented Technology" as discussed below. For simplicity, I refer to pHytOUT V, pHytOUT XP, pHytOUT FG, USWS 2500 and USWS 2400 products herein as "pHytOUT."
[16] Deposition of Roy Johnson 6.
[17] '137 and '399 patent.
[18] Per NZ-USW00026289_HIGHLY_CONFIDENTIAL.xslx.  *See also,* Expert Report of Eric Dorn Regarding Infringement 4.

HIGHLY CONFIDENTIAL

### 1.    Novozymes A/S

Novozymes A/S is a Danish corporation with its principal place of business in Bagsvaerd, Denmark.[19]  Novozymes A/S is a global company that sells industrial enzymes, microorganisms and biopharmaceutical ingredients.[20]

### 2.    Novozymes North America, Inc.

Novozymes North America, Inc. is a New York corporation with its principal place of business in Franklinton, North Carolina.[21]  Novozymes North America, Inc. appears to be a subsidiary of Novozymes A/S.[22]

## III.    The Patented Technology – deposit control technology to reduce fouling in ethanol plants

The '137 patent is titled "Preventing Phytate Salt Deposition in Polar Solvent Systems." It issued on April 9, 2013.[23]  The '399 Patent is titled "Reducing Insoluble Deposit Formation in Ethanol Production" and it issued on December 17, 2013.[24]  I understand that the '399 patent is a continuation of the '137 patent, appears to share a common specification and the benefits of both are the same.[25]  I refer to both patents, collectively, as "the Patented Technology."  I understand that the Patented Technology generally relates to methods for deposit control to reduce fouling in fuel ethanol plants.

Eric Dorn, technical expert for U.S Water stated:[26]

> These patents generally relate to **reducing the formation of insoluble deposits of phytic acid and salts of phytic acid in fuel ethanol-processing equipment in fuel ethanol plants**. [emphasis added]

---

[19] Compl. ¶ 3.
[20] Compl. ¶ 3.
[21] Compl. ¶ 4.
[22] Compl. ¶ 4.
[23] '137 patent, Col 1. 50 – 53.
[24] '399 patent.
[25] The '137 and '399 patents.  *See also*, Expert Report of Eric Dorn Regarding Infringement 4.
[26] Expert Report of Eric Dorn Regarding Infringement 4.

HIGHLY CONFIDENTIAL

I understand that deposit formation or "fouling" of equipment was a long-recognized problem in the ethanol industry.[27]  Typically, the areas of the plant that experience fouling are the heat exchangers, the beer column and the evaporators.[28]  I understand that different plants have different points of fouling, though one especially problematic area has been the beer mash heat exchanger.[29]

When fouling occurs in a heat exchanger, I further understand that deposits that include phytic acid and phytic acid salts form on heated surface areas, which reduce heat exchanger efficiency, reduce flow rates and increase pressure.[30]

I understand that the distinguishing advantages of the Patented Technology over other alternatives, such as the addition of sulfuric acid, are that fuel ethanol plants are able to reduce deposit formation, fouling rate and severity, reduce sulfuric acid usage, operate areas of the plant at higher pH levels, increase energy savings from the more efficient heat transfer and also potentially increase ethanol yields.[31]

I am not a technical expert and do not intend to provide opinions relative to the technical aspects of the Patented Technology.  For purposes of my report, I assume Novozymes has infringed the Patented Technology.  Further, to the extent that one or both patents are found to be infringed, the damages analysis would be the same.[32]

## A.    Overview of dry grind ethanol process

Fuel ethanol plants typically operate by converting starchy grains such as corn, wheat or milo (sorghum) into ethanol by utilizing yeast to ferment the available parts of those materials into ethanol.[33]

A dry grind plant begins the process by milling the grain to produce a "meal."[34]  The meal is then mixed with water and "backset" in a "slurry" tank.[35]  The slurry "mash" is then sent to a

---

[27] Expert Report of Eric Dorn Regarding Infringement 11.
[28] Expert Report of Eric Dorn Regarding Infringement 11.
[29] Discussion with Eric Dorn.
[30] Discussion with Eric Dorn.
[31] Discussion with Eric Dorn. ████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
[32] While the damages analysis would be the same, the damages period, and the pounds subject to damages, would be adjusted accordingly.  *See* **Schedule 1.0**.
[33] Expert Report of Eric Dorn Regarding Infringement 8.
[34] Expert Report of Eric Dorn Regarding Infringement 8.
[35] Expert Report of Eric Dorn Regarding Infringement 8.

HIGHLY CONFIDENTIAL

"liquefaction" tank to provide residence time for enzymatic reactions.[36]  The heated mash from the liquefaction system is then generally cooled by passing it through a beer-mash heat exchanger on its way to the fermentation system.[37]  I understand that pHytOUT is typically added to the process in ████████████████████.[38]

In the fermentation system, yeast is added either directly or through use of a propagator tank to heated mash from the liquefaction tank.[39]  When the fermentation is complete, the material, now typically termed "beer," is transferred to the "beer well" and then to the distillation system after generally passing though the, same as previously discussed, beer-mash heat exchanger.[40]

The first stage of the distillation system is the "beer column" where the ethanol separation process begins.[41]  In the beer column, ethanol and water vapor is separated from the remainder of the beer, referred to as "whole stillage."[42]

Whole stillage is then typically separated into two stream; "wet cake" and "thin stillage."[43]  Wet cake contains high fiber and solids content and is processed into animal feed.[44] Thin stillage is either recycled back as "backset" or else passed through evaporators where water is removed to create "syrup" which is combined with wet cake to make animal feed.[45]

## B.     How Ethanol Plants Addressed Fouling Prior to pHytOUT

According to Eric Dorn, until the time of the invention, deposits were handled in one of two ways: (1) hydroblasting or cleaning in place ("CIP") with sulfamic acid or caustic, or (2) lowering the pH of the "beer", typically through the addition of sulfuric acid, thereby reducing the deposits, the potential deposits and/or the rate of deposit formation.[46]  For plants that use phytase, the cost savings from the reduction of sulfuric acid are an easy benefit to quantify.[47]

---

[36] Expert Report of Eric Dorn Regarding Infringement 9.
[37] Expert Report of Eric Dorn Regarding Infringement 9.
[38] Discussion with Eric Dorn; discussion with Roy Johnson; *see also*, Expert Report of Eric Dorn Regarding Infringement 21-52.
[39] Expert Report of Eric Dorn Regarding Infringement 9.
[40] Expert Report of Eric Dorn Regarding Infringement 9-10.
[41] Expert Report of Eric Dorn Regarding Infringement 10.
[42] Expert Report of Eric Dorn Regarding Infringement 10.
[43] Expert Report of Eric Dorn Regarding Infringement 10.
[44] Expert Report of Eric Dorn Regarding Infringement 10.
[45] Expert Report of Eric Dorn Regarding Infringement 10.
[46] Expert Report of Eric Dorn Regarding Infringement 11.
[47] Discussion with Roy Johnson and Eric Dorn.

HIGHLY CONFIDENTIAL

## IV.     U.S. Water's Patented Product - pHytOUT

U.S. Water first introduced its pHytOUT product in mid-2009 as pHytOUT V (or "V"), ███████████████████████████████████████████████.[48]  Subsequent to Novozymes entering the market ████████████████████, U.S. Water introduced pHytOUT XP ("XP") and U.S. Water 2500 ("2500") ██████████████████████████████████████████████████ ████████████████████████████████████████████.[49]  I refer to pHytOUT V, XP and 2500 (and other minor pHytOUT products) collectively as "pHytOUT."

### A.     pHytOUT pounds, sales, ASP and profit

**Table 1** below summarizes pHytOUT V, XP, 2500 and other pHytOUT annual pounds, sales dollars, gross profits and gross profit % rates:[50]

Table 1:  pHytOUT pounds, sales dollars and gross profit %



---

[48] Discussion with Dennis Pasko.

[49] ████████████████████████████████████████████████

[50] **Schedule 6.4**.

HIGHLY CONFIDENTIAL

**Table 2** below summarizes pHytOUT V, XP, 2500 and other pHytOUT average sales price (ASP) / per pound, cost of goods sold / per pound and gross profit / per pound:[51]



Table 2:  pHytOUT ASP, cost of goods sold and gross profit per pound



### B.    pHytOUT plants and customers

As previously discussed, pHytOUT is currently sold for use in dry grind fuel ethanol plants.[52]  I understand that there are approximately 224 dry grind fuel ethanol plants in North America and that ████████████████████████████████████████████ ████████ ███████████████████████████████████████████████████████████████████████████ ████████████████████████████  ███████████████████████████████████████████████

---

[51] **Schedule 6.4**.
[52] Discussion with Dennis Pasko.
[53] Discussion with Dennis Pasko.
[54] Discussion with Dennis Pasko.



## D.   Benefits of pHytOUT

I understand that pHytOUT is sold to provide the benefits of the Patented Technology as described earlier.  In addition, numerous market realities demonstrate the recognized benefits provided by pHytOUT, such as the increasing pHytOUT sales and high profit rates shown in **Table 1** above, as well as, Novozymes wanting to replace pHytOUT (as described further below).



---

[55] Discussion with Dennis Pasko.
[56] **Schedule 6.5**.
[57] Discussion with Dennis Pasko.
[58] Discussion with Roy Johnson.
[59] Discussion with Dennis Pasko.
[60] **Schedule 6.6**.
[61] Discussion with Dennis Pasko.
[62] Discussion with Dennis Pasko.
[63] **Schedule 8.0**.

HIGHLY CONFIDENTIAL



## V.   Novozymes' Phytase Products - Phytaflow

Novozymes has sold, offered for sale and is selling phytase products for use in practicing the Patented Technology.[64]  The Novozymes products that are involved in the accused infringement include:[65]

- Novozym 50161 ("50161")
- Phytaflow

I refer to the Novozyme products involved in the accused infringement, collectively, as "Phytaflow."



[67]  According to Eric Dorn, technical expert for U.S. Water, Novozymes Phytaflow was developed and marketed for the same purpose as the Patented Technology.[68]

Further, it appears that Novozymes specifically targeted its Phytaflow to replace pHytOUT.  For example:

---

[64] Discussions with counsel.
[65] Discussion with counsel.  Novozymes also sells a product called "Novozym 50226" which includes phytase.  This amount equates to less than 0.5% of the infringing pounds.
[66] NZ-USW00026294.  *See also*, Letter to Lissa Koop, dated 09/15/2014 from Ewa Davison.
[67] NZ-USW00026375.
[68] Expert Report of Eric Dorn regarding Infringement 4.

HIGHLY CONFIDENTIAL



### A.    Phytaflow pounds, sales, ASP and profit

Novozymes has provided product information showing its Phytaflow pounds, sales, ASP and profit.[77]  **Table 3** below summarizes annual pounds, sales dollars, average sales price (ASP) / per pound, average incremental costs / per pound, and incremental profit / per pound for Novozyme's Phytaflow:[78]

---

[69] NZ-USW00003923 - NZ-USW00003931 at NZ-USW00003928.
[70] NZ-USW00026489 - NZ-USW00026491 at NZ-USW00026490.
[71] NZ-USW00026489 - NZ-USW00026491 at NZ-USW00026490.
[72] NZ-USW00026489 - NZ-USW00026491 at NZ-USW00026489.
[73] NZ-USW00026487 - NZ-USW00026488 at NZ-USW00026487.
[74] NZ-USW00027954 - NZ-USW00027956 at NZ-USW00027955.
[75] NZ-USW00026792.
[76] NZ-USW00000106 - NZ-USW00000126 at NZ-USW00000118.
[77] Per NZ-USW00026289_HIGHLY_CONFIDENTIAL.xslx.  Note that the Phytaflow data was provided in kilograms, and are converted to pounds throughout to be consistent with the U.S. Water data that is expressed in lbs.
[78] **Schedule 5.0**.

**Table 3:  Novozymes' pounds, sales dollars, ASPs and profit per pound**



### B.    Phytaflow's lower pricing

Novozymes has competed with U.S. Water in part by offering Phytaflow at lower prices than U.S. Water's pHytOUT.[79]



---

[79] **Schedules 5.0** and **6.0**.  Discussions with Dennis Pasko.
[80] **Schedule 5.0**.
[81] **Schedule 5.0**.
[82] **Schedule 6.0**.
[83] Discussion with Dennis Pasko.
[84] Discussion with Dennis Pasko.
[85] Discussion with Dennis Pasko.
[86] Deposition of Michael Chisam 39-40.
[87] Deposition of Michael Chisam 40-41.

HIGHLY CONFIDENTIAL



## C.   Novozymes identified similar Phytaflow benefits

In August 2013, shortly after the issuance of the '137 patent, Novozymes promoted Phytaflow on its website.[90]  When describing Phytaflow, Novozymes' website stated:[91]

> Novozymes Phytaflow – Ensuring smoother plant operations
>
> …
>
> The effects of fouling can cost ethanol plants time and money. Fouling reduces the efficiency of heat exchangers, which increases the natural gas usage, and can cause downtime in production. Fouling also can require additional sulfuric acid and/or hydroblasting.



[88] Deposition of Michael Chisam, Exhibit 8.  *See also*, KANSASETH000736.
[89] Deposition of Lyle Schyler 117.
[90] http://www.novozymes.com/en/solutions/bioenergy/starch-based-ethanol/viscosity-reduction/Phytaflow/Pages/default.aspx.  This appears to be the earliest website capture available and the one closest to the hypothetical negotiation.
[91] https://web.archive.org/web/20130829121000/http://novozymes.com/en/solutions/bioenergy/starch-based-ethanol/viscosity-reduction/Phytaflow/Pages/default.aspx.

HIGHLY CONFIDENTIAL



A benefit sheet posted in June 2014 expanded on the description of Phytaflow and stated:[93]

> Phytaflow is a phytase applied in fermentation that directly reduces backend fouling to ensure smoother plant operations.  With Phytaflow, reduced fouling provides your plant the benefit of chemical and energy savings all while retaining flexibility to control and optimize enzyme dose.



---

[92] NZ-USW00026374.
[93] https://web.archive.org/web/20140612181634/http://novozymes.com/en/solutions/bioenergy/starch-based-ethanol/viscosity-reduction/Phytaflow/Documents/2013-06976-01-Phytaflow.pdf.
[94] NZ-USW00000208 - NZ-USW00000209.
[95] NZ-USW00000209.
[96] NZ-USW00000209.



**D.** **Phytaflow appears to be sold with Novozyme's sales of** ███████

---

[97] NZ-USW00000209.

[98] ████████████████████████████████

[99] Fourth Supplemental Objections and Responses to Novozymes' First Set of Interrogatories (Nos. 1-14) to U.S Water Services, Inc. at 35.

[100] ███████████████████████████████████████████████████████████████████████████████████████████████████████████████

[101] Fourth Supplemental Objections and Responses to Novozymes' First Set of Interrogatories (Nos. 1-14) to U.S Water Services, Inc. at 36.  *See, e.g.*, Rogers Dep. Ex. 38 at NZ-USW00007207; Fowler Dep. Ex. 12 at NZ-USW00003004-05.

[102] Expert Report of Eric Dorn Regarding Infringement 67.  *See also*, Fourth Supplemental Objections and Responses to Novozymes' First Set of Interrogatories (Nos. 1-14) to U.S Water Services, Inc. at 35 - 40.

[103] Expert Report of Eric Dorn Regarding Infringement 67.  *See also*, Fourth Supplemental Objections and Responses to Novozymes' First Set of Interrogatories (Nos. 1-14) to U.S Water Services, Inc. at 35 - 40.

[104] NZ-USW00026826 - NZ-USW00026827 at NZ-USW00026826.

HIGHLY CONFIDENTIAL



---

[105] NZ-USW00027555 - NZ-USW00027565 at NZ-USW00027558.
[106] NZ-USW00003004 - NZ-USW00003006 at NZ-USW00003004.
[107] NZ-USW00027995 - NZ-USW00027996 at NZ-USW00027995.

HIGHLY CONFIDENTIAL



## VI.    Damages opinions and basis

### A.    Overview of patent damages

I have determined U.S. Water's damages incurred as a result of the alleged accused

patent infringement.  Damages in patent cases are measured according to 35 U.S.C. Section 284:

> Upon finding for the claimant the court shall award the claimant
> damages adequate to compensate for the infringement, but in no
> event less than a reasonable royalty for the use made of the
> invention by the infringer, together with interest and costs as fixed
> by the court.[109]

Compensatory patent infringement damages attempt to assess:[110]

> . . . the difference between his pecuniary condition after the
> infringement, and what his condition would have been if the
> infringement had not occurred.

The question to be asked in determining such damages are:[111]

> . . . had the Infringer not infringed, what would Patent Holder-
> Licensee have made?

Compensatory patent damages traditionally have fallen into two categories, either of

which may be involved in a particular case:  lost profits and reasonable royalty.[112]  I have been

asked to address damages in the form of a reasonable royalty.

---

[108] NZ-USW00028074 - NZ-USW00028075.
[109] 35 U.S.C. § 284 (1994).
[110] *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 507 (1964); Compensatory Damage Issues in Patent Infringement Cases: A Handbook for Federal District Court Judges 3, Jan. 2010.
[111] *Aro,* 377 U.S. at 507.
[112] Compensatory Damage Issues in Patent Infringement Cases: A Handbook for Federal District Court Judges 3, Jan. 2010.  A third category, an established royalty, is often considered a form of a reasonable royalty.

HIGHLY CONFIDENTIAL

The value of what was taken measures the reasonable royalty. The Federal Circuit has stated: [113]

> As a substantive matter, it is **the "value of what was taken" that measures a "reasonable royalty"** under 35 U.S.C. § 284. [emphasis added]

In determining the reasonable royalty, I address relevant royalty considerations within the context of the fifteen factors set forth in the case *Georgia-Pacific Corp. v. The United States Plywood Corp.* (the *Georgia-Pacific* Factors).[114] Specifically, *Georgia-Pacific* Factor #15 relates to the development of a reasonable royalty based on a hypothetical negotiation between a willing licensor (U.S. Water) and a willing licensee (Novozymes) just before the infringement began.[115]

## B.    Hypothetical negotiation – approximately April 9, 2013

The hypothetical negotiation presumes that both parties assume that the patent is valid and infringed.[116] While the hypothetical negotiation takes place at or just before the infringement, the Federal Circuit has stated the negotiation "*permits and often requires a court to look at events that occurred thereafter and that could not have been known to or predicted by the hypothesized negotiators,*"[117] and, in certain situations, "*factual developments occurring after the date of the hypothetical negotiation can inform the damages calculation.*"[118] This is often referred to as the "*Book of Wisdom.*"[119]

In this matter, I address the hypothetical negotiation between U.S. Water and Novozymes. I assume the hypothetical negotiation would have taken place in April 2013 (April 9, 2013, is the date of issuance of the first patent) for the Patented Technology. At that time, Novozymes had been selling its Phytaflow for over a year.[120]

---

[113] *Ericsson, Inc., v. D-Link Systems, Inc.* (Fed. Cir. 2014) (J. O'Malley) (citing *Dowagiac Mfg. Co. v. Minn. Moline Plow Co*., 235 U.S. 641, 648 (1915)).
[114] *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970).
[115] *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324 (Fed. Cir. 2009).
[116] *Lucent Techs., Inc. v. Gateway, Inc.,* 580 F.3d 1301, 1325 (Fed. Cir. 2009).
[117] *Fromson v. Western Litho Plate & Supp. Co*., 853 F.2d 1568, 1575 (Fed. Cir. 1988).
[118] *Lucent*, 580 F.3d 1301 at 1333-34.
[119] *Lucent*, 580 F.3d 1301 at 1333-34.
[120] **Schedule 5.0**.

### C.     The royalty base – Phytaflow pounds[121]

License agreements and royalty amounts can be expressed in various forms.  Lump sum royalty amounts and running royalties are the two primary forms of royalties.  Lump sum royalty amounts are a single, lump sum dollar amount.  Running royalties can be expressed in various forms such as a percentage of sales or as an amount per unit.  Running royalty amounts are typically determined by starting with a royalty base and multiplying the royalty base by a royalty rate.

The entire market value rule addresses the royalty base and considers whether the sales price of the entire product (as opposed to the sales price of a portion of the product, for example) should be the royalty base upon which a royalty rate percentage is applied.  The entire market value rule is described as follows:

> The entire market value rule allows for the recovery of damages based on the value of an entire apparatus containing several features when the feature patented constitutes the basis for customer demand.[122]

The pHytOUT and Phytaflow products are specifically distinguishable products from other types of products because they are standalone phytase products specifically sold and used for deposit control and reduction of fouling.  The Patented Technology reasonably represents the basis for customer demand.  While the entire market value rule applies, I address royalty damages in this matter in the form of a running royalty rate per pound applied to the Phytaflow pounds subject to damages.

### D.     Royalty rate – quantitative considerations

As noted above, I address the hypothetical negotiation considerations in the negotiation between U.S. Water and Novozymes.  I address the determination of a reasonable royalty within the construct of the 15 *Georgia-Pacific* Factors.  A determination of a reasonable royalty considers both quantitative and qualitative elements as well.  The *Georgia-Pacific* Factors themselves are generally comprised of either quantitative or qualitative considerations.

My analysis first addresses quantitative royalty rates, and then addresses the qualitative analysis relative to those quantitative amounts.  Quantitative analysis is based upon basic

---

[121] **Schedule 1.0** outlines various infringement scenarios and Phytaflow pounds.
[122] *LaserDynamics, Inc. v. Quanta Computer, Inc.,* 694 F.3d 51(Fed. Cir. 2012), quoting *Lucent Techs., Inc. v. Gateway, Inc.,* 580 F.3d 1301, 1336 (Fed. Cir. 2009).

HIGHLY CONFIDENTIAL

valuation theory comprised of three categories of valuation approaches referred to as: (1) income, (2) market, and (3) cost. The income valuation approach considers the amount of expected profit that is attributable to the invention and/or the increased profits derived from the invention. The market valuation approach considers comparable licenses and royalty rates. The cost valuation approach typically considers the cost to design around the invention. As explained below, the income approach is most relevant here, while the market approach provides additional guidance.

        **1.**        **Income approach – range of approximately $10.00 to $5.00 per pound**

        **a)**



Phytaflow had already replaced pHytOUT at multiple ethanol plants such as:[125]

---

[123] **Schedule 6.0.**
[124] **Schedules 6.0** and **7.2.**
[125] **Schedule 10.1.** ████████████████████████████████████
████████████████ *See* **Schedule 10.0.**

HIGHLY CONFIDENTIAL

████████████████████████████████████████████████

████ :[126]

**Chart 1:  pHytOUT and Phytaflow pounds: 2009 through 2012**



        In addition, U.S. Water has relationships with and/or experience with many of the ethanol

plants in the U.S.[127] ███████████████████████████████████

████████████████████████████████████████

---

[126] **Schedule 9.0**.
[127] Discussion with Dennis Pasko, Todd Emslander and Roy Johnson.

██████. [128] ████████████████████████████████

███████████████████████

███████████████████████████████

████████████████████████████████

**b)** ████████████████████████████

████████████████████

U.S. Water had developed the market for the Patented Technology that provides the reduced fouling and other benefits in dry grind ethanol plants.  It had priced its products accordingly.  Novozymes did not. ███████████████████████

██████████████ ██████████████████████████████

███████████. [131]

Phytaflow was introduced ████████ ████████████████████

█████████. [132]  In 2012 Phytaflow average price was ████████████ ████████████

████████████████. [133]

As can be seen in **Chart 2** below, in 2012, with Phytaflow in the market, ████████

█████████████████████████████████████. [134]



_____

[128] ████████████████████████████
████████████████████████████████
███████████████████████████████
███████████████████████
[129] **Schedule 5.4**.  Calculated by adding up Valero plants and dividing by the total post-issuance pounds.
[130] **Schedule 6.0**.
[131] **Schedules 6.0** and **9.0**.
[132] **Schedule 6.0**.
[133] **Schedule 5.0**. ██████████████████████████
███
[134] **Schedule 6.0**.

HIGHLY CONFIDENTIAL

**Chart 2:  pHytOUT and Phytaflow pounds: 2009 through 2014**



In early 2013, prior to the issuance of the '137 patent on April 9, ▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.[136]

After the market entrance of the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.[137]
Novozymes' ongoing price undercutting was an ongoing concern to U.S. Water, both before and
after the April 2013 hypothetical negotiation.[138]  Subsequent to the issuance of the '137 patent,
Novozymes sold its accused Phytaflow at prices below ▮▮▮▮▮ per pound whereas ▮▮▮▮▮▮▮▮▮▮

---

[135] **Schedule 6.0**.
[136] **Schedule 6.3**.
[137] **Schedules 3.0** and **6.4**.
[138] Discussion with Roy Johnson, Dennis Pasko and Todd Emslander.

████████████████████████████████████████████████████.[139]  During
this time, U.S. Water's pHytOUT product mix continued to shift from its original, ████████████
████████████████████████████████.[140]
████████████████████████████████████
████████.[141]  Novozymes' average Phytaflow selling price was ████████ per pound, ████████████████████
████████.[142]  In other words, with its Patented Technology, ████████████████████████████
████████████████████████████████  Novozymes allegedly infringing Phytaflow.  Accounting for U.S.
Water's 2013 additional incremental costs (*i.e.*, sales costs) ████████████████████████████
██████████████ ██ ████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████
██████████████████████████.[144]

        **c)**  ████████████████████████████████████
████████████████████████

      pHytOUT is part of U.S. Water's EPT, or Ethanol Process Technologies division.  ████████████
████████████████████████████████████████ █ ████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████.[146]
████████████████████████████████████████████████████████
██████ █ ████████████████████████████████████████████

---

[139] **Schedules 5.0** and **6.0**.
[140] **Schedule 6.4**.
[141] **Schedule 3.0**.
[142] **Schedule 3.0**.
[143] **Schedule 3.0**.
[144] ████████████████████████████████████████████████████
[145] **Schedule 7.1**.
[146] **Schedule 4.0**.
[147] **Schedule 7.1**.

HIGHLY CONFIDENTIAL

██████████████████████  ████████████████████████████████
████████████████████████████████████████████████████████
██████████████████████████████████████████████

▆ [149] .

████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████
██████████████████████████████████

### d)    Phytaflow profit per unit – more than ████████████████

As of the hypothetical negotiation, with its lower prices, Novozymes was earning ██████████ ████████████ in incremental profit on its Phytaflow.[150]  Novozymes would have recognized that without the hypothetical license for the Patented Technology, it would not have been able to earn these profits.  This profit amount provides evidence of Novozymes' view of the lost value from not licensing the Patented Technology.

### 2.    Market Approach – U.S. Water supply agreements ████████████████

I understand that there are no naked license agreements for the Patented Technology.[151]  Rather, U.S. Water has licensed the Patented Technology in conjunction with supply agreements it has entered into with various customers.[152] ████████████████████████████████

████████████████████████████████████████████████████  ████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████▆
████████████████████████████████████████████████████████

---
[148] **Schedule 4.1**.
[149] **Schedule 2.0**.
[150] **Schedule 5.0**.
[151] Discussions with Dennis Pasko and Roy Johnson.
[152] **Schedule 8.0**.
[153] *See, e.g.*, USW-N00049963 – 00049974.
[154] **Schedule 8.0**.



[155] _____

[156] Note that both patents-in-suit are continuations of a patent application filed on October 17, 2007.  Continuation of application No. 13/274,075, filed on Oct. 14, 2011, now Pat. No. 8,415,137, which is a continuation of application No. 11/873,630, filed on Oct. 17, 2007, now Pat. No. 8,039,244.

[157] _____.

[158] **Schedule 6.4**.

[159] **Schedule 6.0**.

[160] **Schedules 5.0** and **6.0**.

[161] Discussion with Dennis Pasko and Todd Emslander.  *See also*, **Schedule 6.4**. _____

[162] **Schedule 6.4**.

*The BERO Group*                                                                                          28

HIGHLY CONFIDENTIAL

████████████████████████████████████████████████████████████
████████████████ .[163]

While the supply agreements do not specifically provide a clear quantitative value for the Patented Technology, they do suggest higher prices than the prices used in the income approach analyses described above.

### 3.     Cost Approach – no apparent guidance

The cost approach considers the cost to design around the patented technology.  In this case, I am unaware of any attempts by Novozymes to design around the Patented Technology.  Consequently, the cost approach provides no guidance in this matter.

### E.     Starting point royalty rate range - $5.00 to $10.00 per pound

As of the April 2013 hypothetical negotiation between U.S. Water and Novozymes, I use the starting point royalty rate range of $5.00 to $10.00 per pound derived from the income approach views of value as described above.  As I address the *Georgia-Pacific* factors below, I address them relative to the starting point royalty rate range.  In effect, I address whether the $5.00 to $10.00 starting point royalty rate range already captures the factor being addressed, or if the factor suggests an upward, downward, or neutral effect on the $5.00 to $10.00 per pound starting point royalty rate range.

### F.     *Georgia-Pacific* Factors

### 1.     Factor #1:  The royalties received by the patentee for the licensing of the patent in suit, proving or tending to prove an established royalty. Upward effect.

This factor can provide the ideal market valuation royalty rate.   As discussed under the market approach above, in its multi-year pHytOUT supply agreements with customers, U.S. Water has licensed the Patented Technology (albeit prior to the patents being issued).  The supply agreements had higher prices than the prices used in the income approach analyses comprising the $5.00 to $10.00 per pound starting pointing point royalty rate range.

The supply agreements generally had ██████ per pound prices, whereas the ██████ per pound high end of the starting point royalty rate range is based on the ██████ per pound average

---

[163] **Schedules 6.4** and **8.0**.  ████████████████████████████████████████
████████████████████████████████████████████ .

HIGHLY CONFIDENTIAL

pHytOUT price as of early 2013.[164]  These supply agreements suggest an **upward effect on the $10.00 per pound high end of the starting point royalty rate range**.

Similarly, the supply agreements suggest an **upward effect on the $5.00 per pound low end of the starting point royalty rate range** that is derived from two of the four income approach analyses (both of which are derived, in part, from the lower ▮▮▮▮Phytaflow selling price in early 2013).[165]

      **2.**     **Factor #2:  The rates paid by the licensee for the use of other patents comparable to the patent in suit.  No effect.**

This is a potential market valuation factor.  I am not aware of any comparable license agreements where Novozymes is the licensee.  This factor has **no effect** on the starting point royalty rate range.

      **3.**     **Factor #3:  The nature and scope of the license, as exclusive or non-exclusive; or as restricted or non-restricted in terms of territory or with respect to whom the manufactured product may be sold.  Neutral effect**.

The license would have been a non-exclusive, non-restricted license between U.S. Water and Novozymes in the United States.  Generally speaking, the non-exclusive nature of the license would tend to have a downward effect on a royalty rate, while the non-restricted nature would tend to have an upward effect on a royalty rate.  The supply agreements were all non-exclusive agreements.

Relative to the starting point royalty rate range, a non-exclusive, non-restricted license would tend to have a **neutral effect** on the starting point royalty rate range.

      **4.**     **Factor #4:  The licensor's established policy and marketing program to maintain its patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly.  Upward effect.**

U.S. Water has licensed the Patented Technology directly to its customers in its supply agreements as noted above. Other than licensing to its customers, I understand that U.S. Water has not licensed the Patented Technology or other U.S. Water patents.[166]  U.S. Water would have

---

[164] **Schedules 6.0** and **8.0**.
[165] **Schedule 5.0**.
[166] Discussion with Roy Johnson.

HIGHLY CONFIDENTIAL

been reluctant to license its principal competitor, particularly given the fact that Novozymes had targeted U.S. Water's customers and sold its competing Phytaflow at lower prices.  This factor has an **<u>upward effect</u>** within the starting point royalty rate range.

5. **Factor #5:  The commercial relationship between the licensor and the licensee, such as, whether they are competitors in the same territory in the same line of business; or whether they are inventor and promoter.  <u>Upward effect</u>.**

A competitive relationship tends to suggest an upward effect on a royalty rate.  As discussed above, U.S. Water and Novozymes are effectively the only competitors in the phytase market for deposit reduction.  Novozymes launched Phytaflow to specifically target and replace U.S. Water's pHytOUT.  In doing so, it undercut Phytaflow prices by a significant amount.  At the time of the hypothetical negotiation, pHytOUT prices had already been reduced due to Phytaflow competition, and Phytaflow had caused ███████████████████████ ███████████████.  In early 2013, Phytaflow's ██████ per pound average selling price ████████████ than pHytOUT's already affected ██████ per pound average selling price.[167]

At the time of the hypothetical negotiation, both U.S. Water and Novozymes would recognize that for every licensed Phytaflow sale that Novozymes would make under the license, that sale would represent a likely sale that U.S. Water would otherwise make.

Relative to the starting point royalty rate range, this factor tends to suggest an **<u>upward effect</u>**.

6. **Factor #6:  The effect of selling the patented specialty in promoting sales of other products of the licensee; the existing value of the invention to the licensor as a generator of sales of its non-patented items; and the extent of such derivative or convoyed sales.  <u>Upward effect</u>.**

As noted above, ███████████████████████████ launched in 2012.[168] ██████████ ██████████████████████████████████████████.[169]  Accordingly, I understand that ████████customers apparently have used a standalone phytase product ████████████

---

[167] **Schedules 5.0** and **6.0**.
[168] Fourth Supplemental Objections and Responses to Novozymes' First Set of Interrogatories (Nos. 1-14) to U.S Water Services, Inc. at 35.
[169] Fourth Supplemental Objections and Responses to Novozymes' First Set of Interrogatories (Nos. 1-14) to U.S Water Services, Inc. at 35; Fowler Dep. 160-161.

HIGHLY CONFIDENTIAL



████ and Phytaflow appear to go hand in hand and Novozymes has adopted the use of Phytaflow as "best practice" for customers using ████.[172] Novozymes apparently has bundled its products, allowing it to sell its products at a lower price, incentivizing customers to buy more than one product from Novozymes.[173] Sales and profits of a product such as ████would have presented an opportunity for Novozymes to factor ████sales and pricing into the lower pricing of Phytaflow.   I understand that Novozymes has not produced its ████ sales, costs, profits or customers.  In the event such information is produced, I reserve the right to supplement my analyses and opinions as necessary.

U.S. Water also sells other EPT products to its customers, such as VOxOUT, ProHib and ProClean.  I understand that ProHib and ProClean are often sold to customers who also purchase pHytOUT, and that when pHytOUT customers are lost, these other products sales are often lost.[174]

Relative to the starting point royalty rate range, this factor tends to suggest an **upward effect** on the starting point royalty rate range.

---

[170] NZ-USW00027555 - NZ-USW00027565 at NZ-USW00027558.
[171] NZ-USW00003004 - NZ-USW00003006 at NZ-USW00003004.
[172] *See* Rogers Dep. Exhibits 22 and 38.
[173] *See, for example*, NZ-USW00027544.
[174] Discussion with Roy Johnson.  Discussion with Dennis Pasko and Todd Emslander.  ████████████
████████████████████████████.  **Schedule 7.0** shows sales and profits of these various U.S. Water EPT products.

7.      **Factor #7:  The duration of the patent and the term of the license.
<u>Neutral effect</u>.**

As noted above, the '137 patent issued on April 9, 2013.  I understand that the patent will expire on approximately October 17, 2027.[175]  As further noted above, the '399 patent issued on December 17, 2013.  I understand that the patent also will expire on approximately October 17, 2027.[176]  At the time of the hypothetical negotiation, the '137 patent would have had approximately 14.5 years remaining and the '399 patent would have had approximately 13.75 years remaining, respectively.

My experience suggests that a longer license tends to suggest a slight upward effect on a royalty rate.  Relative to the starting point royalty rate range, this factor tends to suggest a **<u>neutral effect</u>** on the starting point royalty rate range.

8.      **Factor #8:  The established profitability of the product made under the patent; its commercial success; and its current popularity.
<u>Neutral effect</u>.**

The income approach as described above captures the product's profitability, while also capturing its commercial success and current popularity.

The profitability of the pHytOUT and Phytaflow products are captured in the starting point royalty rate range.  ███████████████████████████████████████████

████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

████████████████████████████████[177]  Since then, the volume has grown through 2014.[178]

Relative to the starting point royalty rate range, this factor would have a **<u>neutral effect</u>** on a royalty rate.

---

[175] Discussion with counsel.
[176] Discussion with counsel.
[177] **Schedule 9.0**.
[178] **Schedule 9.0**.

HIGHLY CONFIDENTIAL

**9.      Factor #9:  The utility and advantage of the patent property over the old modes or devices, if any, that had been used for working out similar results.  <u>Upward effect</u>.**

Factors #9 and # 10 both relate to the advantages due to the use of the Patented Technology and the related benefits to the user of the technology over alternative means of achieving similar results.  As discussed throughout my report, the Patented Technology provides numerous benefits including deposit control and reduces deposit formation, fouling rate and severity, reduces sulfuric acid usage, increases energy savings from more efficient heat transfer and potentially increases ethanol yields.

Both Novozymes and U.S. Water documents address the pHytOUT and Phytaflow advantages as addressed throughout.  The U.S. Water supply agreements contained partial return on investment calculations and demonstrated customer values typically in multiples of the typical ███████████████ price to those customers.[179] ██████████████████████████████

██████████████████████[180]

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████ or Novozymes ██████

███████ in early 2013), that do not fully capture the pricing originally derived from the Patented Technology. Therefore, this factor would tend to have an **<u>upward effect</u>** on a royalty rate.

**10.      Factor #10: The nature of the patented invention; the character of the commercial embodiment of it as owned and produced by the licensor; and the benefits to those who have used the invention.  <u>Upward effect</u>.**

Similar to Factor #9 above, prior to the sales of the allegedly infringing Phytaflow, U.S. Water sold its pHytOUT at higher prices. ██████████████████████████████

---

[179] **Schedule 8.0**.
[180] ██████████████████████████████████████████████ *See* NZ-USW00000059.

HIGHLY CONFIDENTIAL

██████████████████████████████████████████████████.  Relative to the starting

point royalty rate range, this factor would tend to have an **upward effect** on a royalty rate.

> **11.    Factor #11: The extent to which the infringer has made use of the invention and any evidence probative of the value of that use.  Neutral effect.**

Novozymes has sold approximately ████████████ of accused Phytaflow for the period

from April 9, 2013 through December 31, 2014.[181]  It had and has sold its Phytaflow at lower

prices and earned lower profits than U.S. Water on its sales of pHytOUT.  As addressed under

Factor #6, Novozymes has also sold ████████ in conjunction with Phytaflow, however, I have not

yet seen the ████████ financial data.  To the extent that Novozymes has used its sales of

Phytaflow and/or the pricing of its Phytaflow product to derive value from its product, this factor

would suggest an upward effect on the low end of the royalty range.  Hence, I reserve my right to

supplement my analysis if further information regarding ████████ is obtained.  Relative to the

overall starting point royalty rate range, based on the information reviewed to date, this factor

has a **neutral effect**.

> **12.    Factor #12:  The portion of the profit or selling price that may be customary in the particular business or in comparable businesses for the use of the invention or analogous inventions.  No effect.**

This factor is another consideration in a market approach to valuation.  I am not aware of

any evidence suggesting an industry custom regarding apportioning the selling price or profit for

the use of the Patented Technology or analogous inventions.  This factor has **no effect** on the

starting point royalty rate range.

> **13.    Factor #13:  The portion of the realizable profit that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer.  Higher end of range.**

For Novozymes, the Phytaflow product was not one that had been conceived and

developed.  ████████████████████████████████ ██ ████████████████████████████

████████████████████████████████████████████████████████████.

---

[181] **Schedule 1.0**.
[182] Lyle Schlyer Dep. Ex. 13.

HIGHLY CONFIDENTIAL



This suggests a royalty rate toward the **higher end** of the starting point royalty rate range.

14. **Factors #14 & #15:  The opinion and testimony of qualified experts, and the amount that a licensor (such as the patentee) and licensee (such as the infringer) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is the amount a prudent licensee – who desires as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention – would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a licensee.**

At the time of the hypothetical negotiation in April 2013, the parties would have reasonably been aware of the following considerations:

---

[183] **Schedule 5.0.**
[184] **Schedule 2.0.**

HIGHLY CONFIDENTIAL



- Prior to the Phytaflow competition, the benefits to customers supported a market price of pHytOUT of approximately ▮▮▮ per pound
- U. S. Water had already reduced its pHytOUT prices from approximately ▮▮▮ per pound in 2011 to ▮▮▮▮▮▮▮▮
- U.S. Water was earning more than ▮▮▮ per pound on pHytOUT
- Novozymes U.S. Water was earning more than ▮▮▮ in premium over its other EPT products
- Novozymes was earning more than ▮▮▮▮▮ on Phytaflow

The $5.00 to $10.00 per pound starting point royalty rate range captures some of these considerations.  Numerous *Georgia-Pacific* Factors addressed above suggest an upward effect within this range.  The direct competition between the licensor and licensee combined with Novozymes' undercutting the pHytOUT prices suggests and upward effect within the range.  In particular, Factor #13 highlights the portion of profit attributable (i.e. the amount that should be apportioned) to the patented technology as opposed to profit that is attributable to other non-patented elements, manufacturing, risks, sales and distribution and other contributions.  It suggests a value of more than $8.00 per pound.

### G.  Opinion:  A reasonable royalty is $8.00 per pound, and royalty damages approximate ▮▮▮▮▮ through December 31, 2014.[185]

It is my opinion that a reasonable royalty rate is $8.00 per pound.  I note that this rate is higher than Novozymes' ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.[186]  However, I also note it was Novozymes' decision to undercut U.S. Water's pricing.  I recognize that the Federal Circuit has stated:[187]

> The infringer's selling price can be raised if necessary to accommodate a higher royalty rate, and indeed, requiring the infringer to do so may be the only way to adequately compensate the patentee for the use of its technology.

---

[185] **Schedule 1.0**.
[186] **Schedule 5.0**.
[187] *Douglas Dynamics, LLC v. Buyers Prods. Co.*, 717 F.3d 1336, 1346 (Fed. Cir., 2013).

HIGHLY CONFIDENTIAL

Had Novozymes charged ████ per pound consistent with U.S. Water's supply agreements (and less than the average ████ per pound price in 2011) while paying an $8.00 per pound royalty, its costs would have increased from approximately ████ o ████ per pound.  At that price and cost point, Novozymes would have earned the same ████ per pound profit (less ████████████████████ it was earning as of the hypothetical negotiation date.  That profit rate approximates ████  While Novozymes has not provided financial statements, I note that the ████████████████████████████████ ████████████████████.[188]  Alternatively, Novozymes could have sold at lower prices thereby reducing its profits per pound or resulting in Phytaflow losses in order to support its other products such as ████

Applying the $8.00 per pound royalty rate to the allegedly infringing sales beginning April 9, 2013 through December 31, 2014 results in reasonable royalty damages of approximately ████[189]

I have also been asked to consider an alternative hypothetical negotiation, for just the '399 patent, issued on December 17, 2013.  In such an event, the hypothetical negotiation would have been on approximately December 17, 2013.  **Table 5** below compares the four income approach quantitative factors as of April 9, 2013 and December 17, 2013.

Table 5: Income approach quantitative factors

| | | '137 Patent | '399 Patent |
|---|---|---|---|
| | | Jan 1 - Apr 8, 2013 | Jan 1 - Dec 16, 2013 |
| ████████ | | | |
| ████████ | | ██ | ██ |
| ████████ | | | |
| ████ | | ██ | ██ |
| ████ | | ██ | ██ |
| | | ██ | ██ |

The same primary factors and issues addressed above would apply in both hypothetical negotiation scenarios.  The quantitative figures are also comparable.  It is my opinion that in the later hypothetical negotiation, the reasonable royalty rate would also be $8 per pound  Applying

---

[188] **Schedule 7.1.**
[189] **Schedule 1.0.**

HIGHLY CONFIDENTIAL

the $8 per pound royalty rate to the allegedly infringing sales beginning December 17, 2013 through December 31, 2014 results in at least reasonable royalty damages of approximately ██████.[190]

## VII.   Conclusion

My opinions and analyses contained herein are based upon information that is presently known to me.  As additional information is made available, I may update my opinions and analyses accordingly.  At this point, I have quantified damages through December 31, 2014.  I may be asked to provide updated calculations or interest calculations as appropriate, and I will update damages upon receipt of additional allegedly infringing sales or additional relevant information accordingly.  Also, to the extent that I am asked to provide a post-judgment royalty analysis, I will do so accordingly.  I also note that these damages included in my analysis do not contain any potential residual ongoing future damages resulting Novozymes' alleged infringement with its significantly lower prices.

Respectfully submitted,

Richard F. Bero, CPA, CVA
April 1, 2015

---

[190] **Schedule 1.0**.

HIGHLY CONFIDENTIAL

# Data and Other Information Considered - as of April 1, 2015
# Attachment 1

## LEGAL FILINGS:

First Amended Complaint dated February 20, 2014

Memorandum in Support of Novozymes' Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted and to Stay Discovery dated February 26, 2014

Preliminary Pretrial Conference Order dated March 4, 2014

Plaintiffs' Opposition to Defendants' Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted and Opposition to Defendants' Motion to Stay Discovery dated March 19, 2014

Reply Memorandum in Support of Novozymes' Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted and to Stay Discovery dated March 31, 2014

Opinion and Order dated June 11, 2014

Plaintiffs' Answer to Defendants' Counterclaims to Plaintiffs' First Amended Complaint dated July 16, 2014

Stipulated Protective Order dated July 24, 2014

  Exhibit A signed by Richard Bero dated November 19, 2014

Defendants Novozymes A/S and Novozymes North America, Inc.'s Amended Answer and Counterclaims to U.S. Water Services, Inc. and Roy Johnson's First Amended Complaint dated November 10, 2014

Defendants Novozymes A/S and Novozymes North America, Inc.'s Amended Answer and Counterclaims to U.S. Water Services, Inc. and Roy Johnson's First Amended Complaint dated November 14, 2014

Plaintiffs' Answer to Defendants' Amended Answer and Counterclaims to Plaintiffs' First Amended Complaint dated December 1, 2014

## INTERROGATORIES:

Objections and Responses to Novozymes' Third Set of Interrogatories (No. 17) ) to U.S Water Services, Inc.dated November 3, 2014

Second Supplemental and Amended Objections and Responses to Novozymes' Second Set of Interrogatories (nos. 15-16) to U.S Water Services, Inc. dated November 14, 2014

Fourth Supplemental Objections and Responses to Novozymes' First Set of Interrogatories (Nos. 1-14) to U.S Water Services, Inc. dated November 18, 2014

Novozymes' Third Supplemental Responses to Plaintiffs First Set of Interrogatories dated November 14, 2014

Novozymes' First Supplemental Responses to Plaintiffs Second Set of Interrogatories (Nos. 12-15) dated November 14, 2014

Novozymes' First Supplemental Responses to Plaintiffs Third Set of Interrogatories (Nos. 16-18) dated November 14, 2014

Novozymes' First Supplemental Responses to Plaintiffs Fourth Set of Interrogatories (Nos. 19-21) dated November14, 2014

## U.S. PATENTS AT ISSUE:

United States Patent - Patent No. US 8,415,137 B2 - Preventing Phytate Salt Deposition in Polar Solvent System issued on April 9, 2013

United States Patent - Patent No. US 8,609,399 - Reducing Insoluble Deposit Formation in Ethanol Production issued on December 17, 2013

## EXPERT REPORTS:

Expert Report of Scott D. Kohl Regarding Invalidity of the Patents-In-Suit dated November 18, 2014

Expert Report of Eric Dorn Regarding Infringement dated November 18, 2014

Corrected Expert Report of Rodney Simms Regarding Validity dated December 18, 2014

HIGHLY CONFIDENTIAL

# Data and Other Information Considered - as of April 1, 2015
# Attachment 1

### DEPOSITIONS:

Deposition of Michael Chisam dated September 20, 2014 with Exhibits 1-10
Deposition of Thane Combs dated September 20, 2014 with Exhibits 1-23 and Novozymes 1000-1004
Deposition of Donna MacSwain-Santos dated September 24, 2014 with Exhibits 1-11
Deposition of Larry Camden Fowler II dated September 30, 2014 with Exhibits 1-12
Deposition of Dustin Reynolds dated October 1, 2014 with Exhibit 1-10 and Novozymes 1004-1005
Deposition of Sam Sacco dated October 1, 2014
Deposition of Mark T. Skoog dated October 7, 2014 with Exhibits 1006 - 1023
Deposition of Nathan Anderson dated October 10, 2014 with Exhibits 1-15
Deposition of Lyle Schlyer dated October 10, 2014 with Exhibits 1-15 and Novozymes 1024-1029
Deposition of William Whitlock dated October 10, 2014 with Exhibits 1-6
Deposition of Jarrett Hollis dated October 14, 2014 with Exhibits 1-19
Deposition of Rogerio Thuchschmid Nadler Prata dated October 14, 2014 with Exhibits 1-12
Deposition of Ramsena Dadesho dated October 14, 2014 with Exhibits 20-25
30 (b)(6) Deposition of Jack Carlson Rogers dated October 16, 2014 with Exhibits 1-38
Deposition of Leon Gerry dated October 20, 2014 with Exhibits 1-13 and Novozymes 1030
Deposition of Paul R. Young dated November 6, 2014 with Exhibits 1031-1049 and 1092-1110
Deposition of Sonny Ferman Volume I and II dated November 13, 2014 with Exhibits 1-39
Deposition of Roy A. Johnson dated November 18, 2014 with Exhibits 1050 - 1058
Deposition of Monty J. McCoy dated December 11, 2014
Deposition of Dennis Pasko (Rough Draft) dated March 24, 2015 with Exhibits
Deposition of Todd Emslander (Rough Draft) dated March 26, 2015 with Exhibits 1043-1221

### DISCUSSIONS:

Al Bly, CEO
Todd Emslander, Director of Sales of Ethanol Process Technologies ("EPT")
Roy Johnson, Chief Innovation Officer and one of the inventors of the Patents-In-Suit;
Monty McCoy, Director of Technology
Rachel Nelson, Senior Financial Analyst
Dennis Pasko, Vice President of EPT

### U.S. WATER SERVICES DOCUMENTS WITH BATES STAMPS:

USW-N00000176
USW-N00049963 - 00049974
USW-N00005552 - 00005566
USW-N00005568 - 00005579

HIGHLY CONFIDENTIAL

# Data and Other Information Considered - as of April 1, 2015
# Attachment 1

USW-N00005581 - 00005593
USW-N00005595 - 00005607
USW-N00005609 - 00005620
USW-N00005622 - 00005634
USW-N00005636 - 00005648
USW-N00049975 - 00049986
USW-N00055347 - 00055395
USW-N00055409 - 00055421
USW-N00056530-001
USW-N00110519
USW-N00110842
USW-N00110873
USW-N00110930 - 00110940

**NOVOZYMES DOCUMENTS WITH BATES STAMPS:**

NZ-USW00000059
NZ-USW00000106 - 00000126
NZ-USW00000184
NZ-USW00000210
NZ-USW00000219
NZ-USW00001034 - 00001036
NZ-USW00001095 - 00001098
NZ-USW00003348
NZ-USW00003405 - 00003482
NZ-USW00005826
NZ-USW00005853
NZ-USW00005970
NZ-USW00005973
NZ-USW00006025
NZ-USW00006031
NZ-USW00006163
NZ-USW00006169
NZ-USW00006176
NZ-USW00006183
NZ-USW00006248
NZ-USW00006250
NZ-USW00006263

HIGHLY CONFIDENTIAL

# Data and Other Information Considered - as of April 1, 2015
# Attachment 1

NZ-USW00006276
NZ-USW00006304 - 00006314
NZ-USW00006337
NZ-USW00006375
NZ-USW00008317
NZ-USW00008498 - 00008500
NZ-USW00008738 - 00008740
NZ-USW00008975
NZ-USW00008985
NZ-USW00009133 - 00009134
NZ-USW00009390 - 00009391
NZ-USW00009400 - 00009404
NZ-USW00009441
NZ-USW00009488 - 00009492
NZ-USW00009639
NZ-USW00009729
NZ-USW00009731
NZ-USW00009735
NZ-USW00009787
NZ-USW00011554 - 00011557
NZ-USW00011567 - 00011569
NZ-USW00011576 - 00011578
NZ-USW00011754 - 00011761
NZ-USW00011822
NZ-USW00011874
NZ-USW00011877
NZ-USW00012038 – 00012044
NZ-USW00012038 - 00012059
NZ-USW00012045 - 00012059
NZ-USW00012118 - 00012132
NZ-USW00012134 - 00012141
NZ-USW00012143 - 00012152
NZ-USW00012154 - 00012161
NZ-USW00012163 - 00012175
NZ-USW00012530 - 00012576
NZ-USW00012642
NZ-USW00012689
NZ-USW00012692

HIGHLY CONFIDENTIAL

# Data and Other Information Considered - as of April 1, 2015
# Attachment 1

NZ-USW00012788 - 00012789
NZ-USW00013028 - 00013030
NZ-USW00013624
NZ-USW00013803 - 00013804
NZ-USW00013818
NZ-USW00013821 - 00013823
NZ-USW00013838
NZ-USW00013846
NZ-USW00013859 - 00013861
NZ-USW00013863 - 00013867
NZ-USW00013886
NZ-USW00013930
NZ-USW00013938 - 00013939
NZ-USW00013955
NZ-USW00013965 - 00013969
NZ-USW00013984
NZ-USW00014040 - 00014041
NZ-USW00014047 - 00014049
NZ-USW00014071 - 00014072
NZ-USW00014074 - 00014075
NZ-USW00014119
NZ-USW00014151 - 00014153
NZ-USW00014162 - 00014164
NZ-USW00014196 - 00014198
NZ-USW00014206
NZ-USW00014213
NZ-USW00014215
NZ-USW00014217 - 00014219
NZ-USW00014231 - 00014238
NZ-USW00014246 - 00014268
NZ-USW00014335 - 00014566
NZ-USW00015620 - 00015645
NZ-USW00015760 - 00015771
NZ-USW00017344 - 00017355
NZ-USW00017448 - 00017449
NZ-USW00017478 - 00017485
NZ-USW00017828 - 00017829
NZ-USW00017832 - 00017862

HIGHLY CONFIDENTIAL

# Data and Other Information Considered - as of April 1, 2015
# Attachment 1

NZ-USW00017877 - 00017880
NZ-USW00017940 - 00017955
NZ-USW00017972 - 00017973
NZ-USW00018098 - 00018099
NZ-USW00018132 - 00018134
NZ-USW00018251 - 00018254
NZ-USW00018429 - 00018430
NZ-USW00018589 - 00018591
NZ-USW00018648 - 00018650
NZ-USW00018781 - 00018783
NZ-USW00018799 - 00018801
NZ-USW00018815
NZ-USW00018992
NZ-USW00019066 - 00019068
NZ-USW00019116 - 00019117
NZ-USW00019154 - 00019155
NZ-USW00019165 - 00019169
NZ-USW00019188 - 00019191
NZ-USW00019468 - 00019472
NZ-USW00019635 - 00019636
NZ-USW00019643 - 00019644
NZ-USW00020426
NZ-USW00020607 - 00020614
NZ-USW00020720 - 00020721
NZ-USW00020807 - 00020812
NZ-USW00021041
NZ-USW00021140 - 00021148
NZ-USW00021150
NZ-USW00021188 - 00021197
NZ-USW00021223 – 00021239
NZ-USW00021266 – 00021282
NZ-USW00021284 - 00021285
NZ-USW00021290 - 00021291
NZ-USW00021351 – 00021388
NZ-USW00021394 - 00021395
NZ-USW00021510 - 00021517
NZ-USW00021536
NZ-USW00021572 – 00021590

HIGHLY CONFIDENTIAL

# Data and Other Information Considered - as of April 1, 2015
# Attachment 1

NZ-USW00021865 - 00021907
NZ-USW00021909 - 00021910
NZ-USW00021939 - 00021941
NZ-USW00022079 - 00022083
NZ-USW00022233
NZ-USW00022470
NZ-USW00022476
NZ-USW00022482
NZ-USW00022536 - 00022538
NZ-USW00022549
NZ-USW00022719 - 00022726
NZ-USW00022807 - 00022812
NZ-USW00023330 - 0002333
NZ-USW00023491 - 00023495
NZ-USW00023508 - 00023512
NZ-USW00023706 - 00023708
NZ-USW00024121 - 00024133
NZ-USW00024135
NZ-USW00024149
NZ-USW00024154
NZ-USW00024156 - 00024158
NZ-USW00024160 - 00024163
NZ-USW00024255 - 00024327
NZ-USW00024383
NZ-USW00024498 - 00024518
NZ-USW00024574
NZ-USW00024662
NZ-USW00024886
NZ-USW00024891
NZ-USW00024950 - 00024951
NZ-USW00025054 - 00025056
NZ-USW00025058 - 00025059
NZ-USW00025061 - 00025062
NZ-USW00025156
NZ-USW00025183
NZ-USW00025213
NZ-USW00025948
NZ-USW00025951

HIGHLY CONFIDENTIAL

# Data and Other Information Considered - as of April 1, 2015
# Attachment 1

NZ-USW00025964
NZ-USW00025985 – 00025986
NZ-USW00026141 - 00026142
NZ-USW00026227
NZ-USW00026241
NZ-USW00026241 - 00026243
NZ-USW00026271
NZ-USW00026289 - 00026290
NZ-USW00026292
NZ-USW00026294 - 00026296
NZ-USW00026306
NZ-USW00026318
NZ-USW00026330
NZ-USW00026343
NZ-USW00026355
NZ-USW00026368
NZ-USW00026370
NZ-USW00026372 - 00026375
NZ-USW00026377
NZ-USW00026379
NZ-USW00026384
NZ-USW00026386 - 00026391
NZ-USW00026393 - 00026399
NZ-USW00026401 - 00026403
NZ-USW00026405
NZ-USW00026409 - 00026411
NZ-USW00026413 - 00026414
NZ-USW00026416 - 00026417
NZ-USW00026420
NZ-USW00026424
NZ-USW00026428 - 00026429
NZ-USW00026441
NZ-USW00026443
NZ-USW00026446
NZ-USW00026450
NZ-USW00026453
NZ-USW00026458
NZ-USW00026465 - 00026467

HIGHLY CONFIDENTIAL

# Data and Other Information Considered - as of April 1, 2015
# Attachment 1

NZ-USW00026470
NZ-USW00026472
NZ-USW00026474 - 00026475
NZ-USW00026477
NZ-USW00026480
NZ-USW00026483
NZ-USW00026487
NZ-USW00026489
NZ-USW00026492 - 00026495
NZ-USW00026497 - 00026498
NZ-USW00026502
NZ-USW00026510 - 00026512
NZ-USW00026524
NZ-USW00026526
NZ-USW00026528 - 00026529
NZ-USW00026533
NZ-USW00026537 - 00026538
NZ-USW00026540
NZ-USW00026552
NZ-USW00026557
NZ-USW00026562 - 00026563
NZ-USW00026565
NZ-USW00026577
NZ-USW00026581
NZ-USW00026583
NZ-USW00026589
NZ-USW00026594
NZ-USW00026596 - 00026597
NZ-USW00026599
NZ-USW00026602
NZ-USW00026608
NZ-USW00026614
NZ-USW00026621 - 00026622
NZ-USW00026624 - 00026625
NZ-USW00026627
NZ-USW00026629 - 00026630
NZ-USW00026638
NZ-USW00026646

HIGHLY CONFIDENTIAL

# Data and Other Information Considered - as of April 1, 2015
# Attachment 1

NZ-USW00026655
NZ-USW00026659
NZ-USW00026664
NZ-USW00026669
NZ-USW00026675
NZ-USW00026677
NZ-USW00026679 - 00026681
NZ-USW00026684
NZ-USW00026687
NZ-USW00026689
NZ-USW00026692
NZ-USW00026694
NZ-USW00026697
NZ-USW00026702 - 00026703
NZ-USW00026705
NZ-USW00026707
NZ-USW00026710 - 00026712
NZ-USW00026719 - 00026722
NZ-USW00026727 - 00026730
NZ-USW00026733 - 00026737
NZ-USW00026744 - 00026747
NZ-USW00026754 - 00026758
NZ-USW00026761
NZ-USW00026765
NZ-USW00026769
NZ-USW00026777
NZ-USW00026779
NZ-USW00026781
NZ-USW00026783
NZ-USW00026785
NZ-USW00026787 - 00026788
NZ-USW00026790
NZ-USW00026792
NZ-USW00026794
NZ-USW00026796
NZ-USW00026798
NZ-USW00026800 - 00026801
NZ-USW00026803

HIGHLY CONFIDENTIAL

# Data and Other Information Considered - as of April 1, 2015
# Attachment 1

NZ-USW00026805
NZ-USW00026808
NZ-USW00026810
NZ-USW00026812
NZ-USW00026814
NZ-USW00026816
NZ-USW00026818
NZ-USW00026820 - 00026821
NZ-USW00026822 - 00026824
NZ-USW00026826
NZ-USW00026828
NZ-USW00026830
NZ-USW00026832 - 00026833
NZ-USW00026851 - 00026854
NZ-USW00026856 - 00026858
NZ-USW00026865
NZ-USW00026868
NZ-USW00026875
NZ-USW00026883
NZ-USW00026885
NZ-USW00026887 - 00026888
NZ-USW00026890
NZ-USW00026897
NZ-USW00026899
NZ-USW00026902
NZ-USW00026904 - 00026905
NZ-USW00026909
NZ-USW00026914
NZ-USW00026918
NZ-USW00026923 - 00026924
NZ-USW00026926 - 00026927
NZ-USW00026929
NZ-USW00026931
NZ-USW00026935 - 00026937
NZ-USW00026939
NZ-USW00026942
NZ-USW00026945
NZ-USW00026947

HIGHLY CONFIDENTIAL

# Data and Other Information Considered - as of April 1, 2015
# Attachment 1

NZ-USW00026950
NZ-USW00026956
NZ-USW00026960
NZ-USW00026971
NZ-USW00026982 - 00026983
NZ-USW00026986 - 00026990
NZ-USW00026993
NZ-USW00026995
NZ-USW00026997
NZ-USW00027000
NZ-USW00027003
NZ-USW00027009
NZ-USW00027015 - 00027019
NZ-USW00027021 - 00027022
NZ-USW00027024 - 00027025
NZ-USW00027028
NZ-USW00027031
NZ-USW00027035
NZ-USW00027039
NZ-USW00027043
NZ-USW00027047
NZ-USW00027052
NZ-USW00027058
NZ-USW00027065
NZ-USW00027069
NZ-USW00027071
NZ-USW00027073 - 00027074
NZ-USW00027076
NZ-USW00027078
NZ-USW00027082
NZ-USW00027087
NZ-USW00027090
NZ-USW00027093
NZ-USW00027097
NZ-USW00027101 - 00027102
NZ-USW00027104
NZ-USW00027107
NZ-USW00027110

HIGHLY CONFIDENTIAL

# Data and Other Information Considered - as of April 1, 2015
# Attachment 1

NZ-USW00027113
NZ-USW00027125
NZ-USW00027128
NZ-USW00027130
NZ-USW00027133
NZ-USW00027136
NZ-USW00027140
NZ-USW00027144
NZ-USW00027146
NZ-USW00027150
NZ-USW00027154
NZ-USW00027156
NZ-USW00027168
NZ-USW00027170
NZ-USW00027174
NZ-USW00027179
NZ-USW00027185
NZ-USW00027193
NZ-USW00027200
NZ-USW00027202
NZ-USW00027204
NZ-USW00027206
NZ-USW00027209
NZ-USW00027213
NZ-USW00027216
NZ-USW00027219
NZ-USW00027224
NZ-USW00027229
NZ-USW00027233
NZ-USW00027238
NZ-USW00027241
NZ-USW00027245
NZ-USW00027247
NZ-USW00027250
NZ-USW00027254
NZ-USW00027256
NZ-USW00027259
NZ-USW00027263

HIGHLY CONFIDENTIAL

# Data and Other Information Considered - as of April 1, 2015
# Attachment 1

NZ-USW00027268
NZ-USW00027271
NZ-USW00027273
NZ-USW00027276
NZ-USW00027279
NZ-USW00027281
NZ-USW00027285
NZ-USW00027293
NZ-USW00027302
NZ-USW00027306
NZ-USW00027311 - 00027312
NZ-USW00027315
NZ-USW00027319
NZ-USW00027323
NZ-USW00027326
NZ-USW00027330
NZ-USW00027332 - 00027334
NZ-USW00027336
NZ-USW00027339
NZ-USW00027341
NZ-USW00027344
NZ-USW00027348
NZ-USW00027351
NZ-USW00027355
NZ-USW00027358
NZ-USW00027362
NZ-USW00027365
NZ-USW00027377
NZ-USW00027380
NZ-USW00027384
NZ-USW00027389
NZ-USW00027394
NZ-USW00027400
NZ-USW00027407
NZ-USW00027409 - 00027410
NZ-USW00027415 - 00027416
NZ-USW00027418
NZ-USW00027420

HIGHLY CONFIDENTIAL

# Data and Other Information Considered - as of April 1, 2015
# Attachment 1

NZ-USW00027423
NZ-USW00027426 - 00027427
NZ-USW00027430
NZ-USW00027432 - 00027433
NZ-USW00027436
NZ-USW00027440
NZ-USW00027445
NZ-USW00027447 - 00027448
NZ-USW00027462
NZ-USW00027465
NZ-USW00027467 - 00027468
NZ-USW00027470
NZ-USW00027475
NZ-USW00027480
NZ-USW00027483 - 00027484
NZ-USW00027486
NZ-USW00027488
NZ-USW00027491
NZ-USW00027495
NZ-USW00027499
NZ-USW00027503 - 00027504
NZ-USW00027510
NZ-USW00027513
NZ-USW00027516
NZ-USW00027532
NZ-USW00027534 - 00027536
NZ-USW00027538 - 00027539
NZ-USW00027541
NZ-USW00027544
NZ-USW00027546
NZ-USW00027548
NZ-USW00027554 - 00027555
NZ-USW00027566 - 00027567
NZ-USW00027569
NZ-USW00027573
NZ-USW00027577 - 00027578
NZ-USW00027585
NZ-USW00027595

HIGHLY CONFIDENTIAL

# Data and Other Information Considered - as of April 1, 2015
# Attachment 1

NZ-USW00027606
NZ-USW00027618
NZ-USW00027628
NZ-USW00027632 - 00027633
NZ-USW00027637 - 00027638
NZ-USW00027650
NZ-USW00027653
NZ-USW00027655 - 00027656
NZ-USW00027663
NZ-USW00027665 - 00027666
NZ-USW00027673
NZ-USW00027676
NZ-USW00027683
NZ-USW00027685
NZ-USW00027688
NZ-USW00027695
NZ-USW00027702
NZ-USW00027706
NZ-USW00027708
NZ-USW00027711 - 00027712
NZ-USW00027714
NZ-USW00027716
NZ-USW00027723 - 00027725
NZ-USW00027733 - 00027734
NZ-USW00027738
NZ-USW00027740 - 00027742
NZ-USW00027744
NZ-USW00027754 - 00027758
NZ-USW00027759
NZ-USW00027761
NZ-USW00027763
NZ-USW00027769
NZ-USW00027771
NZ-USW00027774
NZ-USW00027778
NZ-USW00027783
NZ-USW00027786
NZ-USW00027788 - 00027789

HIGHLY CONFIDENTIAL

# Data and Other Information Considered - as of April 1, 2015
# Attachment 1

NZ-USW00027796
NZ-USW00027798
NZ-USW00027801
NZ-USW00027805
NZ-USW00027809
NZ-USW00027815 - 00027817
NZ-USW00027819 - 00027820
NZ-USW00027833
NZ-USW00027835
NZ-USW00027837
NZ-USW00027839
NZ-USW00027841
NZ-USW00027844
NZ-USW00027847
NZ-USW00027851
NZ-USW00027855
NZ-USW00027858
NZ-USW00027860
NZ-USW00027860 – 00027862
NZ-USW00027863
NZ-USW00027865
NZ-USW00027868
NZ-USW00027871
NZ-USW00027875
NZ-USW00027879
NZ-USW00027881 - 00027883
NZ-USW00027888
NZ-USW00027888 – 00027896
NZ-USW00027897
NZ-USW00027899
NZ-USW00027904
NZ-USW00027904 – 00027905
NZ-USW00027906
NZ-USW00027910
NZ-USW00027915
NZ-USW00027915 – 00027916
NZ-USW00027917 - 00027919
NZ-USW00027921 - 00027923

HIGHLY CONFIDENTIAL

# Data and Other Information Considered - as of April 1, 2015
# Attachment 1

NZ-USW00027926
NZ-USW00027928
NZ-USW00027930 - 00027931
NZ-USW00027939
NZ-USW00027942
NZ-USW00027944 - 00027945
NZ-USW00027957
NZ-USW00027960
NZ-USW00027964
NZ-USW00027966
NZ-USW00027968
NZ-USW00027976 - 00027977
NZ-USW00027982
NZ-USW00027987
NZ-USW00027993
NZ-USW00027995
NZ-USW00027997
NZ-USW00027999
NZ-USW00028002
NZ-USW00028004
NZ-USW00028006
NZ-USW00028008
NZ-USW00028010 - 00028011
NZ-USW00028013
NZ-USW00028016
NZ-USW00028020
NZ-USW00028028
NZ-USW00028034 - 00028037
NZ-USW00028041
NZ-USW00028043
NZ-USW00028045
NZ-USW00028047
NZ-USW00028055
NZ-USW00028057
NZ-USW00028064
NZ-USW00028067
NZ-USW00028069
NZ-USW00028072

HIGHLY CONFIDENTIAL

# Data and Other Information Considered - as of April 1, 2015
# Attachment 1

NZ-USW00028074
NZ-USW00028077 - 00028078
NZ-USW00028080
NZ-USW00028090 - 00028092
NZ-USW00028128
NZ-USW00028137
NZ-USW00028140
NZ-USW00028142
NZ-USW00028148
NZ-USW00028150
NZ-USW00028153 - 00028154
NZ-USW00028160
NZ-USW00028162 - 00028163
NZ-USW00028165 - 00028166
NZ-USW00028168
NZ-USW00028170 - 00028171
NZ-USW00028173
NZ-USW00028175
NZ-USW00028177
NZ-USW00028179
NZ-USW00028179 – 00028183
NZ-USW00028184
NZ-USW00028186
NZ-USW00028186 – 00028191
NZ-USW00028192
NZ-USW00028195
NZ-USW00028195 – 00028200
NZ-USW00028201
NZ-USW00028203
NZ-USW00028205 - 00028208
NZ-USW00028226
NZ-USW00028229 - 00028231
NZ-USW00028233
NZ-USW00028237
NZ-USW00028240
NZ-USW00028243
NZ-USW00028247
NZ-USW00028249

HIGHLY CONFIDENTIAL

# Data and Other Information Considered - as of April 1, 2015
# Attachment 1

NZ-USW00028252
NZ-USW00028255
NZ-USW00028259
NZ-USW00028261
NZ-USW00028263 - 00028268
NZ-USW00028270
NZ-USW00028280
NZ-USW00028282
NZ-USW00028284 - 00028285
NZ-USW00028290
NZ-USW00028346
NZ-USW00028348
NZ-USW00028351
NZ-USW00028354
NZ-USW00028357
NZ-USW00028362
NZ-USW00028365
NZ-USW00028370
NZ-USW00028373
NZ-USW00028379 - 00028380
NZ-USW00028382 - 00028383
NZ-USW00028396
NZ-USW00028398
NZ-USW00028401
NZ-USW00028403
NZ-USW00028408
NZ-USW00028414
NZ-USW00028421 - 00028422
NZ-USW00028431
NZ-USW00028437
NZ-USW00028440
NZ-USW00028440 - 00028463
NZ-USW00028451
NZ-USW00028464
NZ-USW00028467 - 00028468
NZ-USW00028470 - 00028471
NZ-USW00028475
NZ-USW00028477

HIGHLY CONFIDENTIAL

# Data and Other Information Considered - as of April 1, 2015
# Attachment 1

NZ-USW00028481
NZ-USW00028483
NZ-USW00028485
NZ-USW00028487 - 00028489
NZ-USW00028491
NZ-USW00028493
NZ-USW00028493 - 00028530
NZ-USW00028501
NZ-USW00028514
NZ-USW00028531
NZ-USW00028546
NZ-USW00028550
NZ-USW00028553
NZ-USW00028555
NZ-USW00028558 - 00028559
NZ-USW00028562
NZ-USW00028564
NZ-USW00028566
NZ-USW00028570
NZ-USW00028572 - 00028573
NZ-USW00028575
NZ-USW00028578
NZ-USW00028582
NZ-USW00028586
NZ-USW00028589
NZ-USW00028592
NZ-USW00028594
NZ-USW00028597
NZ-USW00028599 - 00028600
NZ-USW00028604
NZ-USW00028609
NZ-USW00028615
NZ-USW00028622
NZ-USW00028629
NZ-USW00028632
NZ-USW00028640
NZ-USW00028649
NZ-USW00028653

HIGHLY CONFIDENTIAL

# Data and Other Information Considered - as of April 1, 2015
# Attachment 1

NZ-USW00028656
NZ-USW00028660
NZ-USW00028664
NZ-USW00028675 - 00028677
NZ-USW00028679
NZ-USW00028681 - 00028682
NZ-USW00028684
NZ-USW00028686
NZ-USW00028689
NZ-USW00028692 - 00028693
NZ-USW00028700
NZ-USW00028705
NZ-USW00028713
NZ-USW00028715
NZ-USW00028715 – 00028727
NZ-USW00028728
NZ-USW00028737

**OTHER BATES DOCUMENTS:**

GLEW000020 - 000066

**DOCUMENTS WITHOUT BATES STAMPS:**

Allete Press Release Announcing Acquisition of U.S. Water Services, Inc.

████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████

█████████████████████████████████  ███████████

██████████████████████████████████████████████████

█████████████████████████████████████████

██████████████████████

████████████████████

██████████████████████

Phytase Sales 3.17.15
EPT Financials-Values

HIGHLY CONFIDENTIAL

# Data and Other Information Considered - as of April 1, 2015
# Attachment 1

EPT Financial by Product - Values.xlsx
EPT Expense Breakout.xlsx

## INDEPENDENT RESEARCH:

### WEBSITES:

http://www.novozymes.com/en/solutions/bioenergy/starch-based-ethanol/viscosity-reduction/Phytaflow/Pages/default.aspx
https://web.archive.org/web/20130829121000/http://novozymes.com/en/solutions/bioenergy/starch-based-ethanol/viscosity-reduction/Phytaflow/Pages/default.aspx
https://web.archive.org/web/20140612181634/http://novozymes.com/en/solutions/bioenergy/starch-based-ethanol/viscosity-reduction/Phytaflow/Documents/2013-06976-01-Phytaflow.pdf
http://report2012.novozymes.com/service/download-report/the-novozymes-report-2012.pdf

## EXISTING CASE LAW:

*Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 507 (1964)
*Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970)
*Fromson v. Western Litho Plate & Supp. Co.,* 853 F.2d 1568, 1575 (Fed. Cir. 1988)
*Rite-Hite Corp. v. Kelley Co.,* 56 F.3d 1538, 1545 (Fed. Cir. 1995)
*Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324-1325, 1333-1334 (Fed. Cir. 2009)
*LaserDynamics, Inc. v. Quanta Computer, Inc.,* 694 F.3d 51(Fed. Cir. 2012)
*Ericsson, Inc., v. D-Link Systems, Inc*. (Fed. Cir. 2014)

## OTHER:

35 U.S.C. § 284 (1994)

Compensatory Damage Issues in Patent Infringement Cases: A Handbook for Federal District Court Judges 3, Jan. 2010

**Any additional documents, websites or other information referenced throughout this report.**

ATTACHMENT 2



# RICHARD F. BERO, CPA, CVA

N16 W23217 Stone Ridge Drive, Suite 250, Waukesha, WI 53188
Phone – (262) 522-7922   Fax – (262) 522-7938
rbero@berogroup.com

## *PROFESSIONAL EXPERIENCE:*

**The BERO Group / Corporate Financial Advisors, LLC**
Managing Director
Waukesha, Wisconsin                                               December 1995-Present

Mr. Bero founded Corporate Financial Advisors in 1995 and served as Managing Director. The BERO Group evolved from Corporate Financial Advisors and Mr. Bero serves as Managing Director. Mr. Bero provides financial and accounting consulting services and expert testimony pertaining to valuation issues and financial damages issues.

**Coopers & Lybrand**
Manager – Litigation & Claims Services
Milwaukee, Wisconsin                                                          1994-1995

Mr. Bero was the Manager and Practice Leader of the Coopers & Lybrand Milwaukee Litigation & Claims Services practice.

**Peterson Consulting Limited Partnership**
Executive Consultant
Milwaukee, Wisconsin                                                          1989-1994
Chicago, Illinois                                                             1987-1989

Mr. Bero provided litigation and business dispute support services to trial attorneys and corporate counsel.

## *EDUCATION:*

**University of Wisconsin–Madison**                                               1986
Bachelor of Business Administration
Accounting and Finance

*ACTIVITIES/OTHER:*

Intellectual Property Valuation Instructor – National Association of Certified Valuation Analysts

Licensing Executives Society – Co-Chair Wisconsin Chapter – 2006-2008

Intellectual Property Owners Association – Damages Committee Member – 2004-present

National Association of Certified Valuation Analysts, CVA

Wisconsin Institute of Certified Public Accountants:

    Board of Directors – 2000-2002

    Chairman CPA's In Industry – Committee 1997-1999

    Outstanding Committee Chairperson Award – 1997-1998

American Institute of Certified Public Accountants

Becker CPA Review – Instructor 1995-1998

Illinois Certified Public Accountant Society

*PRESENTATIONS:*

| April 2014 | Michigan Intellectual Property Law Association<br>Hot Topics in Patent Damages<br>Troy, Michigan |
|---|---|
| May 2013 | Hot Topics in Patent Royalty Damages<br>Business Valuation Resources Online Symposium on Economic Damages:<br>Part 3<br>Chicago, Illinois |
| September 2011 | WestLegalEdcenter Webinar<br>Recent Patent Damages Decisions – What is the Effect |
| August 2011 | WestLegalEdcenter Webinar<br>Constructing Royalty Rate Damages |
| January 2011 | The Evolution of the Entire Market Value Rule<br>Business Valuation Resources Webinar Series on Advanced Topics<br>in Lost Profits Damages<br>Chicago, Illinois |
| September 2010 | Patent Damages: Managing the Risks and Contingent Costs<br>Business Valuation Resources / Morningstar Summit on Best Practices<br>in Valuing Intellectual Property<br>Chicago, Illinois |
| March 2010 | Tianjin Bar Association<br>Damage Analysis Techniques and Considerations in U.S. Patent Litigations<br>Tianjin, China |

2

| March 2010 | Beijing Lawyers Association<br>Damage Analysis Techniques and Considerations in U.S. Patent Litigations<br>Beijing, China |
|---|---|
| December 2009 | Milwaukee Bar Association<br>Constructing Royalty Rate Damages<br>Milwaukee, Wisconsin |
| October 2009 | Michigan Intellectual Property Law Association<br>Constructing Royalty Rate Damages<br>Detroit, Michigan |
| June 2009 | Licensing Executive Society – Chicago Chapter<br>Constructing Royalty Rates<br>Chicago, Illinois |
| March 2009 | Milwaukee Bar Association<br>Patent Infringement Damages – Working Effectively With Your<br> Damages Expert<br>Milwaukee, Wisconsin |
| January 2009 | Wisconsin Intellectual Property Law Association<br>Constructing Royalty Rates<br>Milwaukee, Wisconsin |
| November 2008 | Licensing Executive Society – Minnesota Chapter<br>Constructing Royalty Rates<br>Minneapolis, Minnesota |
| October 2008 | American Intellectual Property Law Association – Annual Meeting<br>Constructing Royalty Rates<br>Washington, D.C. |
| October 2008 | Minnesota Intellectual Property Law Association<br>Constructing Royalty Rates<br>Minneapolis, Minnesota |
| June 2008 | Presentation to Judges and IP attorneys in China<br>The Development of Patent Damages<br>Shenzhen, China |
| May 2008 | Licensing Executive Society International – Spring Conference<br>Avoiding Intellectual Property Hurdles in the U.S. - The View from China<br>Roundtable Moderator<br>Chicago, Illinois |
| March 2008 | Marquette Law School<br>Royalty Damages in Patent Litigation<br>Guest Instructor – IP Litigation Class<br>Milwaukee, Wisconsin |

3

| | |
|---|---|
| October 2007 | Guarding the Treasure: IP Valuation & Remedies Panelist<br>Sponsored by Foley & Lardner<br>New York, New York |
| October 2007 | Shanghai Bar Association<br>Patent Litigation & Valuation – Real World Examples in the U.S.<br>Shanghai, China |
| October 2007 | Shenzhen Society of Certified Public Appraisers<br>Intellectual Property, Valuation and Damages Analysis – Real World<br>Examples in the U.S.<br>Shenzhen, China |
| May 2007 | Shanghai Intellectual Property Service Center<br>Intellectual Property in the U.S.: Opportunities, Valuation & Litigation<br>Shanghai, China |
| May 2007 | Shenzhen Bar Association<br>Managing and Understanding the Value of IP – Real World Examples<br>in the U.S.<br>Shenzhen, China |
| October 2006 | China Hi-Tech Fair 2006<br>Protection of Chinese Intellectual Property in the U.S.<br>Patent Damages & Ways to Avoid Infringement<br>Shenzhen, China |
| August 2006 | Nanshan Sub-Bureau of Intellectual Property Administration<br>Intellectual Property Value Issues in the United States an Overview<br>for Chinese Businesses<br>Shenzhen, China |
| March 2006 | Milwaukee Bar Association<br>Hindsight is 20/20: Developing & Presenting Damages in Intellectual Property<br>Litigation and Complex Litigation<br>Milwaukee, Wisconsin |
| December 2005 | Wisconsin Intellectual Property Law Association<br>Intellectual Property Damages Update & Discussion<br>Pewaukee, Wisconsin |
| October 2005 | Licensing Executives Society – Annual Meeting<br>Facilitator: Advanced Practices Working Session III: To Sue or Not?<br>How to Decide<br>Phoenix, Arizona |
| September 2005 | Digital Fabrication 2005 Seminar<br>Panel Discussion: Intellectual Property<br>Baltimore, Maryland |

4

September 2005   Intellectual Property Owner's Annual Meeting
         Patent Infringement Damages Update and Discussion
         Seattle, Washington

April 2005     Licensing Executives Society – Wisconsin Chapter
         What's Reasonable: Royalty Damages in Patent Litigation
         Fond Du Lac, Wisconsin

### *EXPERT WITNESS TESTIMONY – LAST FOUR YEARS:*

*Ameritox, Ltd. and Marshfield Clinic v. Millennium Health, LLC*
United States District Court – Western District of Wisconsin
February 2015 (Deposition Testimony)

*Henryk Oleksy v. General Electric Company*
United States District Court – Northern District of Illinois
October 2014 (Deposition Testimony)

*Minitab, Inc. v. EngineRoom, LLC*
United States District Court – Middle District of Pennsylvania
October 2014 (Deposition Testimony)

*Cognex Corp., and Cognex Technology & Investment, LLC v.*
*Microscan Systems, Inc., and The Code Corporation*
United States District Court - Southern District of New York
April 2014 (Trial Testimony)
September 2013 (Deposition Testimony)

*Douglas Dynamics v. Buyers Products Company*
United States District Court - Western District of Wisconsin
April 2014 (Trial Testimony)
October 2010 (Trial Testimony)
September 2010 (Deposition Testimony)

*Cheese Systems, Inc. v. Tetra Pak Cheese and Powder Systems, Inc.,*
*et al.*
United States District Court – Western District of Wisconsin
February 2014 (Deposition Testimony)

*Split Pivot , Inc. v. Trek Bicycle Corporation*
United States District Court – Western District of Wisconsin
December 2013 (Deposition Testimony)

*In Re Innovatio IP Ventures, LLC, Patent Litigation*
United States District Court - Northern District of Illinois
September 2013 (Trial Testimony)
September 2013 (Deposition Testimony)

*Sloan Valve Company v. Zurn Industries, Inc. and Zurn Industries,*
*LLC*
United States District Court - Northern District of Illinois
March 2013 (Deposition Testimony)

*Nordock, Inc. v. Systems, Inc.*
United States District Court - Eastern District of Wisconsin
March 2013 (Trial Testimony)
January 2013 (Deposition Testimony)
August 2012 (Deposition Testimony)

*ABT Systems, LLC, et al. v. Emerson Electric Co.*
United States District Court - Eastern District of Missouri
February 2013 (Trial Testimony)
July 2012 (Deposition Testimony)

*Illumination Management Solutions, Inc. v. Ruud Lighting, Inc.*
United State District Court - Eastern District of Wisconsin
October 2012 (Deposition Testimony)

*Rockwell Automation, Inc. et al. v. WAGO Corporation, et al.*
United State District Court - Western District of Wisconsin
October 2012 (Trial Testimony)
August 2012 (Deposition Testimony)

*Raymond Caluori v. One World Technologies, Inc.*
United States District Court - Central District of California
June 2012 (Trial Testimony)
January 2012 (Deposition Testimony)

*Michael Foods, Inc. v. National Pasteurized Eggs, Inc.*
United States District Court - Western District of Wisconsin
June 2012 (Trial Testimony)
April 2012 (Deposition Testimony)

*Thermal Design, Inc. v. American Society of Heating, Refrigerating, and Air Conditioning Engineers, Inc.*
United States District Court - Eastern District of Wisconsin
May 2012 (Deposition Testimony)

*Wausau Homes Incorporated v. Everest Builders of Minocqua, Inc.*
United States District Court - Western District of Wisconsin
April 2012 (Deposition Testimony)

*Quad/Graphics, Inc. v. One2One Communications, LLC, et al.*
United States District Court - Eastern District of Wisconsin
December 2011 (Trial Testimony)

*Thermal Design, Inc. v. Guardian Building Products, Inc., et al.*
United States District Court - Eastern District of Wisconsin
December 2011 (Deposition Testimony)

*Thilmany, LLC v. Appleton Papers Inc.*
Wisconsin Circuit Court - Outagamie County
February 2011 (Deposition Testimony)

*PUBLICATIONS:*

The Comprehensive Guide to Lost Profits and Other Commercial Damages, "Patent Infringement Damages:  Lost Profits and Royalties" (Chapter 25, 2014 3rd ed., BVR Publications)

April 2011 – CCH Business Valuation Alert, "The *Uniloc* Case: 25 Percent Rule of Thumb Rejected"

The Comprehensive Guide to Lost Profits, "Lost Profits Damages in Patent Infringement Lawsuits" (Chapter 19, 2011 ed., BVR Publications)

August 2009 – IP Law360 – "Demand for the Patented Product – Lower Bar?"

The Comprehensive Guide to Lost Profits, "Lost Profits Damages in Patent Infringement Lawsuits" (Chapter 12, 2009 ed., BVR Publications)

October 2008 – AIPLA White Paper – "Constructing Royalty Rates"

February 2008 – IP Law360 – "IP Litigation in China and the U.S."

Global Intellectual Property Asset Management Report, "Intellectual Property Metrics Today:  It Can Be Done" (June 2005 and July 2005)

Proving and Pricing Construction Claims, "Claims for Lost Profit" (Chapter 14, 2nd ed., 1996, Wiley Law Publications)

HIGHTLY CONFIDENTIAL

# Summary of Royalty Damages
# Schedule 1.0



| | [1] | [2] | [3] | [4] | [4] | [4] | [4] |
|---|---|---|---|---|---|---|---|
| | April 9, 2013 - Dec. 31, 2014 | Dec. 17, 2013 - Dec. 31, 2014 | Dec. 17, 2013 - Dec. 31, 2014 | April 9, 2013 - Dec. 31, 2014 | April 9, 2013 - Dec. 31, 2014 | Dec. 17, 2013 - Dec. 31, 2014 | April 9, 2013 - Dec. 31, 2014 |
| | '137 Claims | '399 Claims reciting a pH limitation | '399 Claims not reciting a pH limitation | '137 Claims & '399 Claims reciting a pH limitation | '137 Claims & '399 Claims not reciting a pH limitation | '399 Claims reciting a pH limitation & '399 Claims not reciting a pH limitation | '137 Claims, '399 Claims reciting a pH limitation & '399 Claims not reciting a pH limitation |

**Phytaflow Pounds (lbs.)**

[A] Ethanol plants with Reduced Pressure / Vacuum or Atmospheric distillation

[A] Ethanol plants with Pressure distillation

Total

[B] Royalty rate

[C] **Royalty damages**

## NOTES / SOURCES:

Note: The asserted claims of the '399 patent that recite a pH limitation are claims 2, 16-22 and 35.

Note: The asserted claims of the '399 patent that do not recite a pH limitation are claims 1, 5-12, 25, 28-32 and 34.

[1] Schedule 1.1.

[2] Schedule 1.2

[3] Schedule 1.3.

[4] All potential double - counting of pounds has been taken into consideration and accounted for.

[A] Schedules 1.1, 1.2 & 1.3.

[B] Per the Bero Report.

[C] = [A] * [B].

HIGHLY CONFIDENTIAL

# Novozymes Phytaflow pounds subject to '137 claims
# Schedule 1.1



HIGHLY CONFIDENTIAL

# Novozymes Phytaflow pounds subject to '137 claims
# Schedule 1.1



HIGHLY CONFIDENTIAL

# Novozymes Phytaflow pounds subject to '137 claims
# Schedule 1.1

| | 2013 | 2014 | Total |
|---|---|---|---|
| | Apr. 9 - Dec. 31 | | |

**NOTES / SOURCES:**

**[A]**  Summarized per NZ-USW00026289_HIGHLY_CONFIDENTIAL.xslx.  April 2013 is calculated based on 23 / 30 days.
         I am instructed that these plants are to be included under the '137 patent claims.

**[B]**  Schedule 5.0.

**[C]**  Per the Bero Report.

**[D]**  = **[A]** x **[C]**.

HIGHLY CONFIDENTIAL

# Novozymes Phytaflow pounds subject to '399 claims reciting a pH limitation
# Schedule 1.2



HIGHLY CONFIDENTIAL

# Novozymes Phytaflow pounds subject to '399 claims reciting a pH limitation
# Schedule 1.2



HIGHLY CONFIDENTIAL

# Novozymes Phytaflow pounds subject to '399 claims reciting a pH limitation
# Schedule 1.2

| | 2013 | 2014 | Total |
|---|---|---|---|
| | Dec. 17 - Dec. 31 | | |

**NOTES / SOURCES:**

**[A]**  Summarized per NZ-USW00026289_HIGHLY_CONFIDENTIAL.xslx.  December 2013 is calculated based on 15 / 30 days.
I am instructed that these plants are to be included under the '399 patent claims reciting a limitation relating to the pH of the ethanol processing fluid
in the beer column being 4.5 or higher.

**[B]**  Schedule 5.1.

**[C]**  Per the Bero Report.

**[D]**   = **[A]** x **[C]**.

HIGHLY CONFIDENTIAL

# Novozymes Phytaflow pounds subject to '399 claims not reciting a pH limitation
# Schedule 1.3



HIGHLY CONFIDENTIAL

# Novozymes Phytaflow pounds subject to '399 claims not reciting a pH limitation
# Schedule 1.3



HIGHLY CONFIDENTIAL

# Novozymes Phytaflow pounds subject to '399 claims not reciting a pH limitation
# Schedule 1.3

| | 2013 | 2014 | Total |
|---|---|---|---|
| | Dec. 17 - Dec. 31 | | |

**NOTES / SOURCES:**

**[A]**  Summarized per NZ-USW00026289_HIGHLY_CONFIDENTIAL.xslx.  December 2013 is calculated based on 15 / 30 days.
I am instructed that these plants are to be included under the '399 patent claims not reciting a limitation relating to the pH of the ethanol processing fluid in the beer column being 4.5 or higher.

**[B]**  Schedule 5.1.

**[C]**  Per the Bero Report.

**[D]**   = **[A]** x **[C]**.

HIGHLY CONFIDENTIAL

# Summary of income approach
# Schedule 2.0

| | 2011 | 2012 | 2013 | | | 2014 |
|---|---|---|---|---|---|---|
| | | | Jan 1 - Apr 8 | Jan 1 - Dec 16 | Sub-total | |
| **[A]** pHytOUT incremental profit per lb. | ■ | ■ | ■ | ■ | ■ | ■ |
| **[B]** pHytOUT pricing premium per lb. - over Novozymes price | ■ | ■ | ■ | ■ | ■ | ■ |
| pHytOUT pricing premium per lb. - over EPT products | | | | | | |
| **[C]**   other EPT products, collectively, gross profit rate | ■ | ■ | ■ | ■ | ■ | ■ |
| **[D]**   next highest EPT product gross profit rate | ■ | ■ | ■ | ■ | ■ | ■ |
| **[E]** Phytaflow profit per lb. | ■ | ■ | ■ | ■ | ■ | ■ |

## NOTES / SOURCES:

Note:  Any minor differences are due to rounding.

**[A]**   Per Schedules 6.0 & 6.1.

**[B]**   Per Schedule 3.0.

**[C]**   Per Schedule 4.0.

**[D]**   Per Schedule 4.1.

**[E]**   Per Schedules 5.0 & 5.1.

HIGHLY CONFIDENTIAL

# pHytOUT pricing premium (over Novozymes price) Schedule 3.0



| | | 2011 | 2012 | 2013 | | | 2014 | Total |
|---|---|---|---|---|---|---|---|---|
| | | | | Jan 1 - Apr 8 | Jan 1 - Dec 16 | Sub-total | | |
| [A] | U.S. Water pHytOUT ASP per lb. | ▬ | ▬ | ▬ | | ▬ | ▬ | ▬ |
| [B] | Novozyme Phytaflow ASP per lb. | ▬ | ▬ | ▬ | ▬ | ▬ | ▬ | ▬ |
| [C] | Difference per lb. | ▬ | ▬ | ▬ | ▬ | ▬ | ▬ | ▬ |
| [D] | *Less: Incremental cost %* | ▬ | ▬ | ▬ | ▬ | ▬ | ▬ | ▬ |
| [E] | Incremental cost per lb. | ▬ | ▬ | ▬ | ▬ | ▬ | ▬ | ▬ |
| [F] | U.S. Water pHytOUT pricing premium per lb. | ▬ | ▬ | ▬ | ▬ | ▬ | ▬ | ▬ |

## NOTES / SOURCES:

Note:  Any minor differences are due to rounding.

[A] Per Schedules 6.1 & 6.2.

[B] Per Schedules 5.1 & 5.2.

[C] = [A] - [B]

[D] Per Schedule 7.2.  Note that the pricing difference would not result in incremental travel costs, however, they are relatively minimal and are included herein as incremental costs.

[E] = [C] * [D]

[F] = [C] - [E]

HIGHLY CONFIDENTIAL



HIGHLY CONFIDENTIAL



HIGHLY CONFIDENTIAL



HIGHLY CONFIDENTIAL



HIGHLY CONFIDENTIAL



HIGHLY CONFIDENTIAL





HIGHLY CONFIDENTIAL



HIGHLY CONFIDENTIAL



HIGHLY CONFIDENTIAL



HIGHLY CONFIDENTIAL



HIGHLY CONFIDENTIAL

HIGHLY CONFIDENTIAL



HIGHLY CONFIDENTIAL

HIGHLY CONFIDENTIAL



HIGHLY CONFIDENTIAL



HIGHLY CONFIDENTIAL



HIGHLY CONFIDENTIAL



HIGHLY CONFIDENTIAL

## Schedule 6.3







HIGHLY CONFIDENTIAL



HIGHLY CONFIDENTIAL - DRAFT



HIGHLY CONFIDENTIAL – DRAFT



HIGHLY CONFIDENTIAL DRAFT



HIGHLY CONFIDENTIAL - DRAFT



HIGHLY CONFIDENTIAL



HIGHLY CONFIDENTIAL





HIGHLY CONFIDENTIAL



HIGHLY CONFIDENTIAL



HIGHLY CONFIDENTIAL



| | | | | | | | Customer cost savings multiple | [2] Customer savings per year | [3] Customer savings (per lb.) | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | 3.0 | $636,375 | $44.79 | | |
| | | | | | | | 8.0 | $2,663,800 | $119.45 | | |
| | | | | | | | 8.0 | $2,663,800 | $119.45 | | |
| | | | | | | | 5.0 | $989,220 | $74.66 | | |
| | | | | | | | 1.5 | $526,842 | $22.40 | | |
| | | | | | | | 2.0 | $748,336 | $29.86 | | |
| | | | | | | | 2.0 | $90,326 | $29.86 | | |
| | | | | | | | 2.0 | $361,306 | $29.86 | | |
| | | | | | | | 2.0 | $229,862 | $29.86 | | |

HIGHLY CONFIDENTIAL



HIGHLY CONFIDENTIAL



HIGHLY CONFIDENTIAL

# USW pHytOUT & Novozymes Phytaflow pounds by year
# Schedule 9.0



| | 2009 | 2010 | 2011 | 2012 | 2013 | 2014 | Total |
|---|---|---|---|---|---|---|---|
| [A] Novozymes Phytaflow pounds | | | ▬ | ▬ | ▬ | ▬ | ▬ |
| [B] U.S. Water pHytOUT pounds | ▬ | ▬ | ▬ | ▬ | ▬ | ▬ | ▬ |
| [C] **Total pounds** | ▬ | ▬ | ▬ | ▬ | ▬ | ▬ | ▬ |

**%'s**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| [D] Novozymes | ▬ | ▬ | ▬ | ▬ | ▬ | ▬ | ▬ |
| [D] U.S. Water | ▬ | ▬ | ▬ | ▬ | ▬ | ▬ | ▬ |
| [D] Total | ▬ | ▬ | ▬ | ▬ | ▬ | ▬ | ▬ |

**NOTES / SOURCES:**

Note:  Any minor differences are due to rounding.

[A]  Per Schedule 5.0.

[B]  Per Schedule 6.0.

[C]  = [A] + [B].

[D]  Calculated based on amounts herein.

HIGHLY CONFIDENTIAL

# U.S. Water customers converted after '137 patent issuance
# Schedule 10.0



HIGHLY CONFIDENTIAL

# U.S. Water customers converted after '137 patent issuance
# Schedule 10.0



**NOTES / SOURCES:**

[A]  Schedule 6.5.

[B]  Schedule 5.4.

HIGHLY CONFIDENTIAL

# U.S. Water customers that converted prior to '137 patent issuance
# Schedule 10.1



HIGHLY CONFIDENTIAL

# U.S. Water customers that converted prior to '137 patent issuance
# Schedule 10.1



**NOTES / SOURCES:**

[A] Schedule 6.5.

[B] Schedule 5.4.