**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WISCONSIN**

| | |
|---|---|
| U.S. WATER SERVICES, INC. and ROY JOHNSON, | |
| Plaintiffs, | |
| v. | No. 3:13-cv-00864-jdp |
| NOVOZYMES A/S and NOVOZYMES NORTH AMERICA, INC., | |
| Defendants. | |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PERMANENT INJUNCTIVE RELIEF AND AN ENHANCED ROYALTY ON NOVOZYMES'S WILLFUL POST-JUDGMENT SALES**

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

ARGUMENT ..................................................................................................................... 3

    I.     A PERMANENT INJUNCTION IS WARRANTED. ......................................... 3

           A.     Permanent Injunctions Are Routinely Granted After a Finding of Infringement by a Direct Competitor. ......................................... 3

           B.     U.S. Water Will Suffer Irreparable Harm in the Absence of an Injunction. ......................................................................... 5

           C.     Monetary Relief Is Inadequate to Compensate for the Continuing Harm of Infringement. ...................................................... 10

           D.     The Balance of the Hardships Favors U.S. Water. ................................ 11

           E.     The Public Interest is Best Served by a Permanent Injunction. .............. 11

           F.     The Injunction Should Be Put in Place Immediately. ............................ 12

    II.    MOTION FOR ONGOING ROYALTY ON POST-JUDGMENT SALES. ...... 15

           A.     An Ongoing Royalty Is an Equitable Remedy that Typically Results in a Higher Rate than Determined by the Jury in Light of Infringer's Now Indisputably Willful Conduct. ...................................... 16

           B.     The Ongoing Royalty Rate Should Be Enhanced to $10.00 per Pound Based on the Willful Nature of Novozymes's Continued Infringement. ......................................................................... 18

           C.     The Court Should Order Novozymes to Provide an Accounting and Pay Ongoing Royalties Quarterly During Any Period in Which It Is Not Enjoined. ...................................................................... 20

CONCLUSION .................................................................................................................. 21

TABLE OF AUTHORITIES

**CASES**

*Acumed LLC v. Stryker Corp.*,
   551 F.3d 1323 (Fed. Cir. 2008)........................................................................5, 6, 9

*Affinity Labs of Tex., LLC v. BMW N. Am., LLC*,
   783 F. Supp. 2d 891 (E.D. Tex. 2011) ......................................................................20

*Amado v. Microsoft Corp.*,
   517 F.3d 1353 (Fed. Cir. 2008).......................................................................16, 17, 18

*Apple Inc. v. Samsung Elecs. Co.*,
   809 F.3d 633 (Fed. Cir. 2015), *cert. denied*, 136 S. Ct. 2522 (2016)...........................7, 11, 12

*ArthroCare Corp. v. Smith & Nephew, Inc.*,
   315 F. Supp. 2d 615 (D. Del. 2004), *vacated in part on other grounds*,
   406 F.3d 1365 (Fed. Cir. 2005)..............................................................................14

*Black & Decker Inc. v. Robert Bosch Tool Corp.*,
   No. 04-C-7955, 2006 WL 3446144 (N.D. Ill. Nov. 29, 2006) .................................................8

*Boston Sci. Corp. v. Cordis Corp.*,
   838 F. Supp. 2d 259 (D. Del. 2012), *aff'd*, 497 F. App'x 69 (Fed. Cir. 2013) ......................17

*Celsis In Vitro, Inc. v. CellzDirect, Inc.*,
   664 F.3d 922 (Fed. Cir. 2012)................................................................................5

*Creative Internet Advert. v. Yahoo!, Inc.*,
   674 F. Supp. 2d 847 (E.D. Tex. 2009) .....................................................................18

*Douglas Dynamics, LLC v. Buyers Prods. Co.*,
   717 F.3d 1336 (Fed. Cir. 2013)...........................................................................7, 8, 9

*Douglas Dynamics, LLC v. Buyers Prods. Co.*,
   76 F. Supp. 3d 806 (W.D. Wis. 2014),
   *aff'd*, 628 F. App'x 767 (Fed. Cir. 2016).................................................................5, 19

*Eaton Corp. v. Parker-Hannifin Corp.*,
   292 F. Supp. 2d 555 (D. Del. 2003).........................................................................14

*eBay, Inc. v. MercExchange, L.L.C.*,
   547 U.S. 388 (2006)...................................................................................3, 4, 5, 10

*Fractus, S.A. v. Samsung Elecs. Co.*,
   876 F. Supp. 2d 802 (E.D. Tex. 2012) .....................................................................18

*Fresenius Medical Care Holdings, Inc. v. Baxter International, Inc.*,
  03-1431 SBA, 2008 WL 928496, at *12–13 (N.D. Cal. Apr. 4, 2008),
  *aff'd in part, rev'd in part on other grounds*, 582 F. 3d 1228 (Fed. Cir. 2009) ......................8

*Fresenius USA, Inc. v. Baxter Int'l, Inc.*,
  No. C 03–1431 PJH, 2012 WL 761712 (N.D. Cal. Mar. 8, 2012),
  *vacated on other grounds*, 712 F.3d 1330 (Fed. Cir. 2013)....................................................17

*i4i Ltd. P'ship v. Microsoft Corp.*,
  598 F.3d 831 (Fed. Cir. 2010)..................................................................................... passim

*In re Seagate Tech., LLC*,
  497 F.3d 1360 (Fed. Cir. 2007)..........................................................................................16, 20

*ION, Inc. v. Sercel, Inc.*,
  No. 5:06-CV-236, 2011WL 13196498 (E.D. Tex. Feb. 16, 2011)...........................................14

*Joyal Prods., Inc. v. Johnson Elec. N. Am., Inc.*,
  Civ. No. 04–5172, 2009 WL 512156 (D.N.J. Feb. 27),
  *aff'd*, 335 F. App'x 48 (Fed. Cir. 2009)................................................................................18

*Mass Engineered Design, Inc. v. Ergotron, Inc.*,
  633 F. Supp. 2d 361 (E.D. Tex. 2009).....................................................................................4

*Mondis Tech. Ltd. v. Chimei InnoLux Corp.*,
  822 F. Supp. 2d 639 (E.D. Tex. 2011),
  *aff'd*, 530 F. App'x 959 (Fed. Cir. 2013)..................................................................17, 18, 20

*Muniauction, Inc. v. Thomson Corp.*,
  502 F. Supp. 2d 477 (W.D. Pa. 2007), *rev'd in part, vacated in part on other
  grounds*, 532 F.3d 1318 (Fed. Cir. 2008) ...............................................................................7

*Novozymes A/S v. Genencor Int'l, Inc.*,
  474 F. Supp. 2d 592 (D. Del. 2007).......................................................................................10

*Paice LLC v. Toyota Motor Corp.*,
  504 F.3d 1293 (Fed. Cir. 2007)...............................................................................16, 17, 18

*Paice LLC v. Toyota Motor Corp.*,
  609 F. Supp. 2d 620 (E.D. Tex. 2009) ...............................................................................17, 21

*Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*,
  702 F.3d 1351 (Fed. Cir. 2012)...............................................................................................6

*Retractable Techs., Inc. v. Occupational & Med. Innovations, Ltd.*,
  No. 6:08 CV 120, 2010 WL 3199624 (E.D. Tex. Aug. 11, 2010)..........................................13

*Robert Bosch LLC v. Pylon Mfg. Corp.*,
    659 F.3d 1142 (Fed. Cir. 2011)...............................................................4, 6

*Sanofi-Synthelabo v. Apotex, Inc.*,
    470 F.3d 1368 (Fed. Cir. 2006)..................................................................11

*Smith & Nephew, Inc. v. Arthrex, Inc.*,
    No. 2:07-cv-335-TJW-CE, 2010 WL 2522428 (E.D. Tex. June 18, 2010)...........................10

*Smith & Nephew, Inc. v. Synthes (U.S.A.)*,
    466 F. Supp. 2d 978 (W.D. Tenn. 2006)........................................................4

*Standard Haven Prods., Inc. v. Gencor Indus., Inc.*,
    897 F.2d 511 (Fed. Cir. 1990)....................................................................12

*SynQor, Inc., v. Artesyn Techs., Inc.*,
    No. 2:07-CV-497, 2011 WL 238645 (E.D. Tex. Jan. 24, 2011)..............................4

*TruePosition Inc. v. Andrew Corp.*,
    568 F. Supp. 2d 500 (D. Del. 2008)............................................................4

*WBIP, LLC v. Kohler Co.*,
    829 F.3d 1317 (Fed. Cir. 2016)..................................................................12

*Windsurfing Int'l, Inc. v. AMF, Inc.*,
    782 F.2d 995 (Fed. Cir. 1986)....................................................................14

## STATUTES

35 U.S.C. § 154(a) (1) (2000) ...................................................................5

35 U.S.C. § 283..............................................................................3, 16

35 U.S.C. § 284............................................................................16, 20

## OTHER AUTHORITIES

Fed. R. Civ. P. 60(b)(5)..........................................................................21

Federal Rule of Civil Procedure 62(c) .........................................................12

U.S. Const. art. I, § 8, cl. 8.......................................................................4

## INTRODUCTION

As a result of its research and substantial financial investment, U.S. Water[1] pioneered a new solution to the long-standing problem of fouling in fuel ethanol plants: the use of phytase to reduce the formation of such deposits.  It protected its inventions by obtaining patents.   And through this investment of time and money, it built a market for that solution in the skeptical fuel ethanol industry, largely by providing free plant trials to prove its novel invention worked.

Riding U.S. Water's coattails, Novozymes plainly infringed U.S. Water's valid patents, as the jury in this case found in two hours.  ECF No. 800 at 1–10.  Through this infringement, Novozymes reaped significant benefits by under-cutting the price of pHytOUT, not just to "snatch" those sales, but to sell its Cadillac product, Avantec, a product that cannot be used without a phytase product.  *See* ECF No. 171-5 at 19; ECF No. 227, ¶ 154.  Even worse, Novozymes's conduct disrupted the "value bubble" created by U.S. Water as the sole supplier of its patented technology.  ECF No. 818 at 66–70.  Novozymes's infringement has eroded U.S. Water's reputation as the innovator of its patented technology.  And, only as a result of Novozymes's infringement, U.S. Water must now directly compete with Novozymes in the market for the use of phytase to reduce phytic acid deposits in fuel ethanol plants.  ECF No. 536 at 12.

Moreover, this infringing competition continues after a jury finding of infringement and validity.  Notably, Novozymes both continues to disparage U.S. Water's reputation as an innovator and advertises the ongoing availability of Phytaflow.  A November 7, 2017, article in Ethanol Producer Magazine quoted Federik Bjoerndal of Novozymes:

> Novozymes  is  disappointed  in  the  jury's  ruling  and  we  intend  to  appeal.
> Novozymes  first  described  the  use  of  phytase  in  fermentation  in  a  patent

---

[1] "U.S. Water" as used herein shall refer collectively to U.S. Water Services, Inc. and Roy Johnson.  "Novozymes" as used herein shall refer collectively to Novozymes A/S and Novozymes North America.

application filed in 2000, seven years prior to U.S. Water.  We are confident that the use of Phytaflow does not infringe any valid patent, and Phytaflow and our phytase-blended products will remain available while the litigation continues.

Declaration of Michelle M. Umberger in Support of Plaintiffs' Motion for Permanent Injunctive Relief and an Enhanced Royalty on Novozymes's Willful Post-Judgment Sales (hereinafter "Umberger Decl.")  Ex. 1 (Lisa Gibson, *Jury Rules in Favor of U.S. Water in Patent Infringement Suit*, Ethanol Producer Magazine (Nov. 7, 2017), http://ethanolproducer.com/articles/14790/jury-rules-in-favor-of-u-s-water-in-patent-infringement-suit).

As Novozymes's attitude toward U.S. Water's patents prior to filing suit, throughout this litigation, and today demonstrates, Novozymes has no regard for U.S. Water's intellectual property.  Novozymes continues to disparage U.S. Water's invention and is now willfully infringing these patents.  All of these actions have irreparably harmed U.S. Water and left it with no adequate remedy at law.  Accordingly, U.S. Water now respectfully requests that the Court enter a permanent injunction prohibiting Novozymes from selling or offering for sale any phytase-containing products to or for use in reducing deposits in fuel ethanol plants.

Failure to enter an injunction would result in a severe hardship to U.S. Water, while a permanent injunction would not unfairly harm Novozymes—a sizable player in the market with an entire portfolio of products not at issue in the current motion.  *See* ECF No. 210 at 3, 69–70. Further, an injunction would serve the public interest in a strong patent system without any collateral negative effect on the public.  *See infra* Part I.

In addition, U.S. Water asks the Court to set a post-judgment royalty rate.  Based on Novozymes's past infringement, the jury awarded U.S. Water $7,582,966 in damages, a conclusion reflecting a reasonable royalty for Novozymes's infringing use of $5.05 per pound of Phytaflow®.  *See* ECF No. 812 at 1.  Courts typically set an ongoing royalty rate that is higher

- 2 -

than the royalty rate found by the jury—up to three times higher—to compensate for an adjudged infringer's ongoing, willful infringement. This case should be no different, and U.S. Water requests that the Court set a royalty rate of $10.00 per pound of phytase-containing products sold by Novozymes after the judgment was entered. This enhanced rate should apply to all post-judgment sales through the entry of an injunction, or, should the Court not issue an injunction, to all post-judgment sales for the life of the patents in suit. *See infra* Part II.

## ARGUMENT

## I.    A PERMANENT INJUNCTION IS WARRANTED.

Following trial, the jury delivered a unanimous verdict that Novozymes induces and contributes to its customers' direct infringement of U.S. Water's asserted patents (Nos. 8,415,137 ("the '137 patent") and 8,609,399 ("the '399 patent")) through Novozymes's sales of its phytase products. ECF No. 800 at 1–12. The jury further found that each of the asserted claims in U.S. Water's patents is valid. *Id.*

Since the jury's verdict, Novozymes has not changed its behavior one iota. Indeed, it has publicly stated that it will not do so. *See* Umberger Decl. Ex. 1. But "business as usual" at this point is not fair to U.S. Water and an injunction is warranted.

### A.    Permanent Injunctions Are Routinely Granted After a Finding of Infringement by a Direct Competitor.

35 U.S.C. Section 283 authorizes a district court to impose a permanent injunction "in accordance with the principles of equity to prevent the violation of any right secured by a patent." In *eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 390 (2006), the Supreme Court confirmed that the "principles of equity" referenced in § 283 involve the evaluation of four traditional factors: (1) whether the plaintiff has suffered an irreparable injury; (2) whether monetary damages are inadequate to compensate for that injury; (3) whether the balance of

hardships between the parties warrants equitable relief; and (4) whether or not the public interest

would be disserved by a permanent injunction.

Although *eBay* eliminated the general rule that an injunction is virtually automatic when

a patent is found to have been valid and infringed,

> it does not swing the pendulum in the opposite direction. In other words, even
> though a successful patent infringement plaintiff can no longer rely on
> presumptions or other short-cuts to support a request for a permanent injunction,
> it does not follow that courts should entirely ignore the fundamental nature of
> patents as property rights granting the owner the right to exclude. Indeed, this
> right has its roots in the Constitution, as the Intellectual Property Clause of the
> Constitution itself refers to inventors' "*exclusive* Right to their respective . . .
> Discoveries." U.S. Const. art. I, § 8, cl. 8 (emphasis added).

*Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1149 (Fed. Cir. 2011) (reversing district

court's post-verdict denial of permanent injunction). Indeed, permanent injunctions are routinely

granted by district courts post-*eBay* after a finding of infringement by a direct competitor. *See,*

*e.g.*, *SynQor, Inc., v. Artesyn Techs., Inc.*, No. 2:07-CV-497, 2011 WL 238645, at *10–11 (E.D.

Tex. Jan. 24, 2011) ("The best case for obtaining a permanent injunction often occurs when the

plaintiff and defendant are competing in the same market."); *Mass Engineered Design, Inc. v.*

*Ergotron, Inc.*, 633 F. Supp. 2d 361, 393 (E.D. Tex. 2009) (holding that the "direct

competition . . . weighs heavily in favor of a finding of irreparable injury"); *TruePosition Inc. v.*

*Andrew Corp.*, 568 F. Supp. 2d 500, 531 (D. Del. 2008) ("Courts awarding permanent

injunctions typically do so under circumstances where plaintiff practices its invention and is a

direct market competitor."); *Smith & Nephew, Inc. v. Synthes (U.S.A.)*, 466 F. Supp. 2d 978,

982–83 (W.D. Tenn. 2006) (finding irreparable injury when parties were competitors based on

"loss of market share and the resulting lost profits and loss of brand name recognition"). Here,

each of the four *eBay* factors weighs in favor of an injunction, as detailed below.

### B.   U.S. Water Will Suffer Irreparable Harm in the Absence of an Injunction.

Applying the first *eBay* factor, without a permanent injunction, U.S. Water will continue to suffer irreparable harm as a result of Novozymes's infringement.  U.S. Water and Novozymes are direct competitors in the market for the use of phytase to reduce deposits in fuel ethanol plants, a factor that weighs heavily in favor of finding irreparable harm.  Furthermore, U.S. Water's reputation as the innovator of this technology continues to be damaged by Novozymes's ongoing, now-willful infringement.  *See Douglas Dynamics, LLC v. Buyers Prods. Co.*, 76 F. Supp. 3d 806, 821 (W.D. Wis. 2014), *aff'd*, 628 F. App'x 767 (Fed. Cir. 2016) (holding that defendant "knew full well that these units infringed but elected to sell them anyway, rather than designing a non-infringing alternative," which makes defendant's "post-verdict sales willful").  Relatedly, U.S. Water has never licensed its patents to a competitor and has no interest in doing so, a choice that further demonstrates that an ongoing royalty would be insufficient to compensate U.S. Water for Novozymes's continued infringement.

Although an injunction provides prospective relief, the first *eBay* factor "looks, in part, at what has already occurred."  *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 862 (Fed. Cir. 2010).  A finding of irreparable harm can be based upon past "[p]rice erosion, loss of goodwill, damage to reputation, and loss of business opportunities . . . ."  *Celsis In Vitro, Inc. v. CellzDirect, Inc.*, 664 F.3d 922, 930 (Fed. Cir. 2012).  Irreparable harm also commonly occurs when the parties are competitors.  As the Federal Circuit noted,

> The essential attribute of a patent grant is that it provides a right to exclude competitors from infringing the patent.  35 U.S.C. § 154(a) (1) (2000).  In view of that right, infringement may cause a patentee irreparable harm not remediable by a reasonable royalty.

*Acumed LLC v. Stryker Corp.*, 551 F.3d 1323, 1328 (Fed. Cir. 2008).

Thus, the Federal Circuit regularly finds irreparable harm when a direct competitor infringes, causing the patentee to suffer lost sales and market share. *See, e.g.*, *i4i*, 598 F.3d at 861 (i4i was irreparably injured by infringement based on direct competition between parties and loss of market share); *Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, 702 F.3d 1351, 1362–64 (Fed. Cir. 2012) (vacating district court's finding of no irreparable harm where record showed patentee and infringer were direct competitors in the same market); *Robert Bosch*, 659 F.3d at 1151 (vacating trial court's finding of no irreparable harm where parties were direct competitors); *Acumed*, 551 F.3d at 1327 (affirming grant of permanent injunction where parties were competitors).

As was established in trial, "PHytOUT and Phytaflow are the only standalone phytases. They're competing against each other, obviously." ECF No. 836, Bero Testimony 10-19-2017 P.M. Tr. at 8-P-16:21–23. This competition has harmed U.S. Water. Indeed, even after U.S. Water significantly lowered its price to compete with Novozymes, Novozymes continued to sell its infringing product for $5.54 less per pound than U.S. Water. *Id.* at 8-P-36:9–12. This Court heard testimony directly from U.S. Water about the harm Novozymes's infringing sales of Phytaflow have caused it to suffer. Allan Bly, former President and CEO of U.S. Water, testified as to U.S. Water's "value bubble," and the harm to that "value bubble" caused by Novozymes's continued infringement—exactly the type of price erosion, loss of goodwill, damage to reputation, and loss of business opportunities that weighs heavily in favor an injunction. Mr. Bly testified that:

- "increased value bubble, means that you're harder to replace by somebody coming in the door. And so really what we found is that when we had the pHytOUT business, our accounts were more stable versus our competitors trying to come in and take them.";

- "the pHytOUT and the pHytOUT sales . . . gave us a platform to create value to help maintain and protect all of our business base, and, you know, again,

with ethanol being such a large portion of U.S. Water's business at those times, it was incredibly important for us.";

- "conversely, once we started to lose some of that business, it was incredibly destructive for us because you would not only lose -- once you pierce that value bubble, you lose -- you not only lose the pHytOUT business, but you start losing auxiliary business and the water treatment business and all the other business that goes along with it because once you're commoditized, everything is commoditized. . . . You can be easily replaced by a like-for-like product or a like-for-like service.";

- "if you are undercut pricewise, it has a significant impact when you're, you know, starting to lose 300,000-dollar pieces of business because you're being undercut."; and

- "If we're $16.23 a pound and a competitor comes in and says they can sell it for, I don't know, say 8 or whatever, yeah, that creates trust issues within accounts. . . . [A]nd then next thing you know your water treatment sales are going out to bid or they're being questioned as well."

ECF No. 818, Bly Testimony 10-19-2017 A.M. Tr.  at 8-A-55:17–21, 8-A-66:13–18, 8-A-66:19–8-A-67:4, 8-A-67:15–18, 8-A-69:3–21.  *See also* Declaration of LaMarr Barnes in Support of Plaintiffs' Memorandum of Law in Support of Motion for Permanent Injunctive Relief and an Enhanced Royalty on Novozymes's Willful Post-Judgment Sales ¶¶ 1–5.

Aside from lost sales, U.S. Water will suffer other irreparable harm.  A patent holder's recognition as a leading innovator "is a tangible benefit afforded by a patent," and damage to this reputation caused by infringement is irreparable.  *Muniauction, Inc. v. Thomson Corp.*, 502 F. Supp. 2d 477, 483 (W.D. Pa. 2007), *rev'd in part, vacated in part on other grounds*, 532 F.3d 1318 (Fed. Cir. 2008); *see also Apple Inc. v. Samsung Elecs. Co.*, 809 F.3d 633, 648 (Fed. Cir. 2015) (Reyna J., concurring), *cert. denied*, 136 S. Ct. 2522 (2016) ("Apple's reputation as an innovator, and the importance of the patents-in-suit to that reputation—establishes that Apple will likely suffer irreparable harm to its reputation.").  This reputational harm can be enough to support an irreparable harm finding, *even in the absence of evidence of lost sales.  Douglas Dynamics, LLC v. Buyers Prods. Co.*, 717 F.3d 1336, 1344 (Fed. Cir. 2013).  U.S. Water's innovation is a key business component, and, as described above, Novozymes continues to

undermine U.S. Water's reputation as the innovator of this technology not only expressly, as in the November 7 statement to the press, but in continuing to sell a product specifically and solely for use in carrying out U.S. Water's patent method.  Umberger Decl. Ex. 1; *see also* Plaintiffs' Trial Exhibit (hereinafter "PTX") 64 (Novozymes presentation stating "Goal: replace Phytout"); ECF No. 824, Kohl Testimony 10-16-2017 P.M. Tr. at 5-P-75:3–6 ("Q.  Have you ever seen a shred of evidence that Phytaflow has been sold for anything other than reducing deposits in fuel ethanol plants? A. No."); PTX 586 (Phytaflow Product Sheet) ("Phytaflow is a phytase applied in fermentation that directly reduces backend fouling to ensure smoother plant operations.").

In *Fresenius Medical Care Holdings, Inc. v. Baxter International, Inc.*, the court elaborated on the irreparable harm caused by damage to reputation:

> Allowing Fresenius to continue to infringe would irreparably harm Baxter's reputation and goodwill as an innovator, threaten Baxter's extensive investments in research and development, and potentially encourage other companies to infringe Baxter's intellectual property. . . .  [Baxter's R&D] investment will be largely for naught, and Baxter's reputation as an innovator and the associated goodwill will be tarnished, if Fresenius, Baxter's arch-rival in the renal field, is allowed to market and sell a product that Baxter, and not Fresenius, invented.

No. C 03-1431 SBA, 2008 WL 928496, at *12–13 (N.D. Cal. Apr. 4, 2008), *aff'd in part, rev'd in part on other grounds*, 582 F. 3d 1228 (Fed. Cir. 2009); *see also Douglas Dynamics*, 717 F.3d at 1344–45 (patent-holder's "reputation will certainly be damaged if customers found the same 'innovations' appearing in competitors" products); *Black & Decker Inc. v. Robert Bosch Tool Corp.*, No. 04-C-7955, 2006 WL 3446144, at *4 (N.D. Ill. Nov. 29, 2006) (reputation as an innovator harmed by continued sale of infringing goods).  Here, not only is Novozymes's ongoing infringement eroding U.S. Water's reputation as the innovator of this technology, Novozymes continues to claim that *Novozymes* is the innovator of this technology, despite the jury's sound rejection of this claim.  And immediately following, Novozymes advertises to the industry that the jury's verdict has no effect on its ability to sell its product for

use in practicing U.S. Water's patented method.  The damage Novozymes continues to inflict on U.S. Water cannot be remedied by money; an injunction is warranted.

In addition, U.S. Water's unwillingness to license the '137 and '399 patents to Novozymes supports a finding of irreparable harm.  A patent holder's refusal to license the patents-in-suit indicates that a reasonable royalty would be insufficient to compensate for an infringement.  *Acumed*, 551 F.3d at 1328.  This is so, in part, because a refusal to license allows a patent-holder to maintain market exclusivity—an important "intangible asset that is part of a company's reputation."  *Douglas Dynamics*, 717 F.3d at 1344–45.  A license to a major competitor would jeopardize U.S. Water's phytase sales network and destabilize its entire business.  Thus, an erosion of U.S. Water's intangible right to exclude would create significant tangible and irreparable harm.

Mr. Bly also testified that U.S. Water has not licensed the patents in suit and has no interest in licensing the patents in suit:

Q: "Does U.S. Water -- did U.S. Water as of 2013 have a policy with respect to licensing pHytOUT?"

A: "No. I mean, we wouldn't have licensed pHytOUT."

. . .

Q: "Did you license the fouling patents that -- any of the '244, the '137, the '399?"

A: "No."

Q: "No licensing?"

A: "No licenses."

Q: "And did you have reasons?"

A: "Yeah. Because in order for somebody -- for us to license somebody, they would have to -- it would have to pay us more than not only the lost sales that we'd have of the pHytOUT product but the synergies associated with the rest of our product line."

Q: "And how about to Novozymes?"

A: "No, we wouldn't have done that."

ECF No. 813, Bly Testimony 10-19-2017 A.M. Tr. at 8-A-71:18–8-A-72:17.

Trial made clear that, as a result of Novozymes's infringement, U.S. Water has suffered lost sales, lost market share, and damage to its reputation and goodwill. U.S. Water has therefore established that Novozymes's infringement has resulted in irreparable harm that continues to this day and undoubtedly will continue unless Novozymes is enjoined.

### C. Monetary Relief Is Inadequate to Compensate for the Continuing Harm of Infringement.

The second *eBay* factor looks at whether monetary relief is adequate to compensate for the infringement. When the infringer, like Novozymes, is a direct market competitor, courts regularly recognize that monetary damages are insufficient to adequately compensate for the lost market share, lost business opportunities, harm to customer goodwill, and reputational damage. *See, e.g.*, *i4i*, 598 F.3d at 862; *Smith & Nephew, Inc. v. Arthrex, Inc.*, No. 2:07-cv-335-TJW-CE, 2010 WL 2522428, at \*3 (E.D. Tex. June 18, 2010). These harms "frequently defy attempts at valuation, particularly when the infringing acts significantly change the relevant market." *i4i*, 598 F.3d at 862. As discussed above, U.S. Water has sustained each of these injuries.

Furthermore, U.S. Water's loss of the "statutory right to exclude" others from practicing the patented inventions cannot be "equated by an award of cash" and supports the entry of an injunction. *Novozymes A/S v. Genencor Int'l, Inc.*, 474 F. Supp. 2d 592, 613 (D. Del. 2007) ("These are head-to-head competitors, and [patentee] Novozymes has a right, granted by Congress, not to assist its rival with the use of proprietary technology.") (granting permanent injunction post-verdict). If Novozymes is permitted to market the infringing products, U.S. Water's right to exclude would be lost to its major competitor for this business. Other potential infringers would further be emboldened by Novozymes's continued right to practice the

- 10 -

invention—*which Novozymes is touting in statements to industry press*—despite being adjudicated an infringer.

### D.     The Balance of the Hardships Favors U.S. Water.

The balance of hardships in this case also favors an injunction.  "The 'balance of hardships' assesses the relative effect of granting or denying an injunction on the parties" and considers such factors as "the parties' size, products, and revenue sources."  *i4i*, 598 F.3d at 862.

In this case, Novozymes is a global biotechnology company with a diverse portfolio of products and revenue sources.  Novozymes would not be driven out of business if they were prevented from practicing the invention.  Requiring Novozymes to comply with an injunction should have little collateral effect on its larger business as a whole.  Further, Novozymes could continue to serve this market segment with its other products or attempt to develop new non-infringing products.

The burden placed on U.S. Water if Novozymes is permitted to continue its infringing activities, on the other hand, is substantial.  In the absence of an injunction, U.S. Water will continue to lose sales, customers, market share, and sustain injury to its reputation and goodwill. On balance, the hardships clearly favor entry of a permanent injunction.

### E.     The Public Interest is Best Served by a Permanent Injunction.

Finally, the public interest will be served, and not harmed, by entry of a permanent injunction.  The public interest in protecting patents outweighs even the potential for any claimed harm that could occur by enjoining Novozymes's sale of phytase products to fuel ethanol plants for deposit control.  *See i4i*, 598 F.3d at 863 ("the public's general interest in upholding patent rights favor injunctive relief"); *Sanofi-Synthelabo v. Apotex, Inc.*, 470 F.3d 1368, 1383 (Fed. Cir. 2006) (recognizing "the importance of the patent system in encouraging innovation" and that this encouragement is the "fundamental purpose" of the system).  In *Apple*, the Federal Circuit

emphasized that "[g]iven the important public interest in protecting patent rights . . . this factor strongly favors an injunction." 809 F.3d at 647. Allowing infringers like Novozymes to utilize patented inventions developed through the investment of others discourages the investment-based risk that the patent system seeks to foster. Failing to enter an injunction would therefore undermine the very essence of the system and disserve the public interest.

On the other hand, there is no public interest served by allowing the infringement to continue. U.S. Water has the capability and sales force to meet the entire market demand for Novozymes's phytase product sales. *See* ECF No. 818, Bly Testimony 10-19-2017 A.M. Tr. at 8-A-66:10–71:1. The tailoring of a permanent injunction "substantially mitigates the negative effects on the public, practically and economically" and "minimizes disruptions to the market and the public." *i4i*, 598 F.3d at 863. The public interest would not therefore be harmed by the removal of Novozymes's phytase products from the market, and the public interest in a strong patent system would be served by entry of an injunction. *See WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1343 (Fed. Cir. 2016) (vacating district court's denial of post-trial injunction; only public interest factor was that of upholding patent rights).

### F.     The Injunction Should Be Put in Place Immediately.

U.S. Water expects that Novozymes will argue that any injunction should be stayed pending appeal pursuant to Federal Rule of Civil Procedure 62(c). Whether an injunction should be stayed pending an appeal involves four considerations: (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the party seeking the stay will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties; and (4) the public interest. *Standard Haven Prods., Inc. v. Gencor Indus., Inc.*, 897 F.2d 511, 512 (Fed. Cir. 1990). A court does not give equal weight to

each factor, but instead uses a flexible balancing approach. *Id.* at 512–14. None of these factors

supports entry of a stay.

First, Novozymes is unlikely to succeed on appeal. A jury decision in the plaintiff's

favor on "all infringement and invalidity issues" undermines any argument that an appellant is

likely to succeed. *Retractable Techs., Inc. v. Occupational & Med. Innovations, Ltd.*, No. 6:08

CV 120, 2010 WL 3199624, at *6 (E.D. Tex. Aug. 11, 2010). This case was fairly decided by a

jury and its findings were fully supported by evidence, as will be addressed in U.S. Water's

responses to Novozymes's Rule 50(b) motions. But in sum:

- Novozymes put forth no defense to direct infringement by its Phytaflow customers;

- Evidence of Novozymes's inducement of infringement and contributory[2] infringement was overwhelming, well beyond sufficient for a jury finding in U.S. Water's favor;

- The Federal Circuit has already held that a reasonable jury could find, as this jury did, that Novozymes's main prior art reference, the Veit patent, does not anticipate the asserted claims; and

- Novozymes's obviousness defense—based in large part on this same prior art— fares no better, particularly in light of prodigious objective evidence of non- obviousness.

It should also be noted that this Court issued a claim construction that Novozymes will be

unable to challenge. In its July 29, 2015, Opinion & Order (ECF No. 561), the Court granted

Novozymes's motion for summary judgment of invalidity, granted U.S. Water's motion for

summary judgment of Novozymes's inequitable conduct claim, and issued two key claim

constructions.[3] This decision was appealed to the Court of Appeals for the Federal Circuit.

---

[2] Even if the Court believes that there is an outstanding legal question as to the applicability of the contributory infringement standard to this case, U.S. Water need only succeed on one of its theories of indirect infringement to justify an injunction.

[3] The Court construed two claim phrases, holding (1) that claims reciting a pH of 4.5 or higher in the beer column require that the pH in the beer column is at 4.5 or higher "at some point" during the production of ethanol; and (2)

- 13 -

Novozymes did not appeal the aspect of the Court's Order construing these claims.  Thus, Novozymes has waived any challenge to these constructions.  *See* ECF No. 607; ECF No. 681. And as to the Court's later claim constructions detailed in its post-remand Order (ECF No. 681), the mere fact that the appeals court will make a "de novo review of [the trial court's] claim construction[s]" does not "merit a stay."  *Eaton Corp. v. Parker-Hannifin Corp.*, 292 F. Supp. 2d 555, 582 (D. Del. 2003).

Second, any argument that Novozymes would be harmed if it were not able to continue to sell infringing products during the appeal should not be countenanced.  This argument has been repeatedly rejected as "offend[ing] the very rights associated with obtaining a patent." *ArthroCare Corp. v. Smith & Nephew, Inc.*, 315 F. Supp. 2d 615, 621 (D. Del. 2004), *vacated in part on other grounds*, 406 F.3d 1365 (Fed. Cir. 2005); *see also Windsurfing Int'l, Inc. v. AMF, Inc.*, 782 F.2d 995, 1003 (Fed. Cir. 1986) ("[o]ne who elects to build a business on a product found to infringe cannot be heard to complain if an injunction against continuing infringement destroys the business so elected").

Furthermore, the fact that the infringing products make up only a small part of a defendant's business weighs against a finding of irreparable harm.  *ION, Inc. v. Sercel, Inc.*, No. 5:06-CV-236, 2011WL 13196498, at *3 (E.D. Tex. Feb. 16, 2011).  This case only involves a small portion of Novozymes's vast portfolio of products and an injunction would have little effect on the global company.  The argument that Novozymes may have difficulty in regaining customers in the event the jury's verdict is overturned is insufficient on its own to support entry of a stay.  *Id.* at *8.

---

that claims reciting "substantially without acid" require that deposit reduction is accomplished substantially by phytase and not by the addition of an acid compound.  ECF No. 561 at 11–16.

Indeed, an immediate injunction is necessary so that U.S. Water may begin regaining its rightful customers and prevent further decline of its price and sales.  Without an injunction U.S. Water will continue to sustain the irreparable injuries discussed above, including harm to its market share, reputation, goodwill and its statutory right to exclude.  Similarly, as detailed above, no public interest would be adversely affected by an injunction since U.S. Water can meet the demand for the patented inventions with its own products and the injunction is narrowly tailored to prevent market disruption.

## II.     MOTION FOR ONGOING ROYALTY ON POST-JUDGMENT SALES.

U.S. Water requests that the Court now set a post-judgment royalty rate of $10.00 per pound that will apply to Novozymes's post-judgment sales of phytase products that are used to infringe U.S. Water's patents.  And, to the extent the Court denies U.S. Water's request for a permanent injunction or stays the entry of such an injunction until after conclusion of the appeal, this royalty rate should be applied to all post-judgment sales for the life of the patents in suit.

The royalty rate awarded by the jury is the appropriate starting point for a post-judgment royalty rate.  *See infra* Part II.A–B.  The jury found that a hypothetical negotiation on the date of Novozymes's first infringement would have resulted in an agreement between U.S. Water and Novozymes for a royalty rate of $5.05 per pound of Phytaflow sold.  The evidence upon which the jury's finding is based is equally pertinent in assessing the current value to Novozymes of continued use of U.S. Water's patents.  That evidence demonstrates, among other things, that U.S. Water's patents remain a "must have" technology for Novozymes and that Novozymes's sales of the infringing products continue to grow.  *See* ECF No. 240-26 at 3.  Moreover, Novozymes's failure to present any evidence at trial of currently available, acceptable, noninfringing alternatives, despite having had nearly four years since the filing of this lawsuit to attempt to design around the U.S. Water patents, is just as pertinent to the Court's going-forward

- 15 -

royalty rate as it was to the jury's conclusions. Accordingly, the jury's $5.05 royalty rate is the *minimum* rate that should be applied to Novozymes's infringing conduct.

Any continuing infringement of U.S. Water's patents by Novozymes after a jury found in U.S. Water's favor on infringement and rejected Novozymes's invalidity defense is, by definition, willful. *See infra* Part II.A. Under 35 U.S.C. § 284, the Court has the discretion to enhance damages for willful infringement, and courts routinely do precisely that when awarding ongoing royalties. *See infra* Part II.B. Accordingly, U.S. Water requests that the Court increase the ongoing royalty rate from the base of $5.05 to $10.00.

A.   **An Ongoing Royalty Is an Equitable Remedy that Typically Results in a Higher Rate than Determined by the Jury in Light of Infringer's Now Indisputably Willful Conduct.**

The Federal Circuit treats an ongoing royalty as an equitable remedy under 35 U.S.C. § 283, not a damages award under 35 U.S.C. § 284. *See Paice LLC v. Toyota Motor Corp.*, 504 F.3d 1293, 1313–14 (Fed. Cir. 2007). Unlike Section 284, Section 283 contains no language regarding "damages adequate to compensate for the infringement," and therefore the focus is not limited to arriving at merely a "reasonable" royalty. Any future infringement after a defendant is adjudged an infringer should thus be considered willful and subject to "damages up to three times the amount found or assessed." 35 U.S.C. § 284; *see also In re Seagate Tech., LLC*, 497 F.3d 1360, 1368 (Fed. Cir. 2007) (an award of enhanced damages proper after "a showing of willful infringement"). As discussed below, royalty rates for post-judgment infringement should therefore be *higher* than those for prejudgment infringement, i.e., in a range of $5.05 to $15.15 per pound of phytase-containing products sold by Novozymes to fuel ethanol plants for deposit control.

In *Amado v. Microsoft Corp.*, the Federal Circuit indicated that the district court should set a post-judgment ongoing royalty rate where a permanent injunction has been entered, but the

- 16 -

injunction has been stayed pending appeal.  517 F.3d 1353, 1362 (Fed. Cir. 2008).[4]  In the absence of an injunction or during a stay, the patentee is entitled to receive ongoing royalties that adequately compensate it for the loss of its lawful right to exclude others from profiting from its invention.  *See, e.g.*, *Paice LLC v. Toyota Motor Corp.*, 609 F. Supp. 2d 620, 630 (E.D. Tex. 2009).  Simply put, the law "must ensure that an adjudged infringer who voluntarily chooses to continue his infringing behavior must adequately compensate the patent holder for using the patent holder's property."  *Id.*  "Anything less would be manifestly unjust and violate the spirit, if not the letter, of the U.S. Constitution and the Patent Act."  *Id.*

In setting the post-judgment ongoing royalty rate, the royalty rate found by the jury is "significant as a starting point" from which to consider whether changes in the parties' bargaining positions merit a different ongoing royalty rate.  *See Fresenius USA, Inc. v. Baxter Int'l, Inc.*, No. C 03–1431 PJH, 2012 WL 761712, at *11 (N.D. Cal. Mar. 8, 2012) (citing *Paice*, 504 F.3d at 1315), *vacated on other grounds*, 712 F.3d 1330 (Fed. Cir. 2013).  Courts often conduct a "modified" *Georgia-Pacific* analysis that takes into account the traditional *Georgia-Pacific* factors, but also considers the new legal status quo between the parties: the defendant is an adjudged infringer and any continuing infringement will be willful by definition.  *See, e.g.*, *Paice*, 609 F. Supp. 2d at 624–31.  While adjudged infringers like Novozymes routinely request a post-judgment ongoing royalty rate lower than the prejudgment rate found by the jury, courts typically set the ongoing rate higher than the jury's rate.[5]

---

[4] Because the issue of whether to award post-judgment ongoing royalties in lieu of a permanent injunction, or while such an injunction is stayed, is equitable in nature, it may be determined by the district court and does not require a trial by jury.  *Paice*, 504 F.3d at 1315–16.

[5] *See, e.g.*, *Boston Sci. Corp. v. Cordis Corp.*, 838 F. Supp. 2d 259, 276 (D. Del. 2012) ("The court declines to allow Cordis, an adjudicated willful infringer, to effectively owe less for its post-verdict infringement than the jury found for its pre-verdict infringement under the circumstances," and sets a 32% ongoing royalty when the jury's verdict was based on a 2.95% royalty rate), *aff'd*, 497 F. App'x 69 (Fed. Cir. 2013); *Mondis Tech. Ltd. v. Chimei InnoLux Corp.*, 822 F. Supp. 2d 639, 646 (E.D. Tex. 2011) (awarding an ongoing royalty rate higher than the jury's because the commercial success following the hypothetical negotiation date justified increasing the rate from 0.5% to 0.75%,

- 17 -

In other words, a higher ongoing royalty rate is justified in the usual case because "pre-suit and post-judgment acts of infringement are distinct."  *Paice*, 504 F.3d at 1317 (Rader, J., concurring); *see also Amado*, 517 F.3d at 1361–62 ("There is a fundamental difference . . . between a reasonable royalty for pre-verdict infringement and damages for post-verdict infringement.").  Prior to the verdict, the defendant is merely an accused infringer, even if the hypothetical negotiation upon which the award for past infringement is based expressly assumes the patents-in-suit are valid and infringed.  Once the jury has actually rendered its verdict and found the patents valid and infringed, the parties' legal relationship changes.  The defendant is now an adjudged infringer and any continued infringement will be even more egregious.  Thus, the plaintiff's bargaining position is considerably strengthened in the hypothetical post-verdict negotiation of an ongoing royalty rate because the plaintiff could bring another lawsuit in which the defendant would be collaterally estopped from asserting any defenses and a finding of willful infringement would be virtually guaranteed.  "[T]he Court must consider the change in the legal relationship between the parties to avoid incentivizing defendants to fight each patent infringement case to the bitter end because without consideration of the changed legal status, there is essentially no downside to losing."  *Fractus, S.A. v. Samsung Elecs. Co.*, 876 F. Supp. 2d 802, 855 (E.D. Tex. 2012).

### B.    The Ongoing Royalty Rate Should Be Enhanced to $10.00 per Pound Based on the Willful Nature of Novozymes's Continued Infringement.

After hearing extensive evidence from both U.S. Water and Novozymes, the jury decided that a hypothetical negotiation occurring on the date of Novozymes's first infringement would

---

and further enhancing it to 1.5%, since ongoing infringement would be willful), *aff'd*, 530 F. App'x 959 (Fed. Cir. 2013); *Joyal Prods., Inc. v. Johnson Elec. N. Am., Inc.*, Civ. No. 04–5172, 2009 WL 512156, *13 (D.N.J. Feb. 27) (26% post-verdict royalty rate representing net operating profit was reasonable, contrasted with 8% rate found by the jury"), *aff'd*, 335 F. App'x 48 (Fed. Cir. 2009); *Creative Internet Advert. v. Yahoo!, Inc.*, 674 F. Supp. 2d 847, 861 (E.D. Tex. 2009) (where jury awarded 20% royalty for the original infringement, ongoing royalty of 23% was proper to account for the changed circumstances and infringer's decision to continue infringing).

have resulted in an agreement by Novozymes to pay U.S. Water a royalty of $5.05 per pound

sold of Phytaflow.   Given Novozymes's choice to continue its infringement, such infringement

is, by definition, willful.  *See Douglas Dynamics*, 76 F. Supp. 3d at 821.  And as noted, not only

is Novozymes continuing its infringing conduct, it is publicizing this fact to the industry.

Umberger Decl. Ex. 1.  An enhanced rate of roughly twice the reasonable royalty is therefore

appropriate.

U.S. Water's requested royalty rate for continued willful infringement is appropriate.  At

trial, U.S. Water presented evidence that a *starting point* for an appropriate royalty rate at the

time of the hypothetical negotiation was somewhere between $5 and $10.  *See* ECF No. 836,

Bero Testimony 10-19-2017 P.M. Tr. at 8-P-41:11–15.  This $5 to $10 per pound starting point

range was based on at least the following facts:

- Novozymes undercut U.S. Water's prices by well over $5 per pound.  *Id.* at 8-P-10:18–21 ("[A] very significant part of the [damages] analysis is the fact that Novozymes was undercutting the prices of the U.S. Water's pHytOUT product.").

- Novozymes's bargain basement pricing was intended to "displace Phytout business" (*see, e.g.*, PTX 579), and resulted in numerous plants switching to Novozymes's product.  ECF No. 836, Bero Testimony 10-19-2017 P.M. Tr. at 8-P-19:17–22:17.

- At the time of the hypothetical negotiation, U.S. Water's average price was $12.55 a pound.  *Id.* at 8-P-17:2–4.  But this $12.55 price was already reduced as the result of competition from Novozymes; prior to Novozymes's market entry, U.S. Water charged *over $15 per pound*.  *Id.* at 8-P-25:11–14.

- U.S. Water expected to receive a profit of over $10 per pound of pHytOUT sold, while Novozymes received a profit of over $6 per pound.  *Id.* at 8-P-38:24–40:23.

- Novozymes needed the patented anti-fouling technology to sell its "Cadillac" product, Avantec®, which was *significantly* more valuable to Novozymes and *could not be used without a stand-alone phytase*.  ECF No. 816, Rogers Testimony 10-13-2017 P.M. Tr. at 4-P-24:11–25; PTX 138; PTX 591.

- The value to the customer and the financial benefits of using a phytase product to reduce fouling far exceed the cost of the phytase product even when priced at the higher U.S. Water price. ECF No. 836, Bero Testimony 10-19-2017 P.M. Tr. at 8-P-77:18–25.  *See also* PTX 586; PTX 598.

The jury agreed with U.S. Water's range, placing damages at $5.05 per pound.

Assessing the same $5.05 per pound rate applied by the jury, however, does not appropriately recognize that Novozymes's ongoing infringement is willful.  *See, e.g.*, *Mondis Tech. Ltd. v. Chimei InnoLux Corp.*, 822 F. Supp. 2d 639, 652–53 (E.D. Tex. 2011) (finding that defendant's post-verdict infringement would be willful and, based on this willfulness, imposing an enhanced ongoing royalty rate of double the jury's reasonable royalty rate).  As discussed above, the Court, in its discretion, may award an ongoing royalty of *up to three times* the royalty rate found by the jury.  *See In re Seagate Tech.*, 497 F.3d at 1368.   Accordingly, and although case law supports the fact that the Court may award a *$15.15 per pound* ongoing royalty rate, U.S. Water requests that the Court increase the ongoing royalty rate from the base of $5.05 to $10.00, based on the willful nature of Novozymes's continuing infringement.  *See, e.g.*, *Affinity Labs of Tex., LLC v. BMW N. Am., LLC*, 783 F. Supp. 2d 891, 901–05 (E.D. Tex. 2011) (enhancing ongoing royalty based on willful nature of continued infringement); 35 U.S.C. § 284 (allowing court to enhance damages for willful infringement).

### C.    The Court Should Order Novozymes to Provide an Accounting and Pay Ongoing Royalties Quarterly During Any Period in Which It Is Not Enjoined.

The Court has discretion to determine the mechanics and timing of payment of any post-judgment ongoing royalties. U.S. Water requests that the Court order Novozymes to:

- pay all ongoing royalties due to U.S. Water quarterly, with payments made in U.S. dollars and according to U.S. Water's payment instructions within fourteen (14) days of the end of each quarter; with the first payment accounting for any unpaid royalties from the date of entry of the judgment forward; and

- provide a statement to U.S. Water, under the penalty of perjury, concurrent with each quarterly payment, that identifies the products on which a royalty is being paid, the number of pounds sold, and the calculation of the total royalty amount.

The Court also should order that U.S. Water has the right to audit Novozymes's sales information on a periodic basis.

This does not mean that Novozymes would be left with no recourse if the circumstances were to change—i.e., if Novozymes were to pursue and successfully implement a noninfringing alternative.  Novozymes could then seek relief from or modification of the ongoing royalty under Fed. R. Civ. P. 60(b)(5).  Moreover, as the district court noted in *Paice*, Novozymes "continues to have the option of ceasing its infringing use of the [phytase] technology or raising prices to pass along the royalty to its consumers."  609 F. Supp. 2d at 631.  Absent changed circumstances, however, equity requires that all of Novozymes's phytase-containing products sold to fuel ethanol plants be covered by the ongoing royalty if the requested injunction is not granted or is stayed.

## CONCLUSION

For the reasons set forth above, U.S. Water requests that the Court grant its motion for permanent injunctive relief and for an enhanced royalty on Novozymes's post-judgment sales.

DATED:  November 21, 2017

*s/ Michelle M. Umberger*

John S. Skilton
JSkilton@perkinscoie.com
Michelle M. Umberger
MUmberger@perkinscoie.com
Christopher G. Hanewicz
CHanewicz@perkinscoie.com
Autumn N. Nero
ANero@perkinscoie.com
Brandon M. Lewis
BLewis@perkinscoie.com
Truscenialyn Brooks
TBrooks@perkinscoie.com
Danielle S. Grant-Keane
DGrantKeane@perkinscoie.com
**Perkins Coie LLP**
One East Main Street, Suite 201
Madison, WI  53703-5118
Telephone:  608.663.7460
Facsimile:  608.663.7499

Colin G. Sandercock
CSandercock@perkinscoie.com
**Perkins Coie LLP**
700 Thirteenth Street N.W.
Washington, DC 20005
Telephone:  202.654.6200
Facsimile:  202.654.6211

*Attorneys for Plaintiffs*
*U.S. Water Services, Inc. and Roy Johnson*

137640564.2

- 22 -